Mr. Justice WOODBURY
 

 delivered the opinion of the court.
 

 The original action in this case was assumpsit by the plaintiffs in error on a-policy of insurance, made August 13, 1845.
 

 From the detailed statement of the facts, it will be seen that the loss occurred on the 13th of March, 1846, and was to be paid to the Ogdensbui’g Bank, which held the title to the property insured, but was under a contract in a certain event to convey it to the plaintiffs, they having already paid for it in part.
 

 The original insurance was made in 1834, by Jonathan Steams, who had mortgaged to the bank the factory insured, and who continued most of the time till the loss to conduct its operations under insurances renewed yearly, often in different names, — stipulating that any loss should be paid to the 'bank.
 

 In April, 1834, when application was first made for insurance, the defendants, doing business in Boston (Mass.), put numerous written interrogatories to Stearns, who lived in Malone (New York), where the factory was situated, and to one of them he replied, that no lamps were “used in the picking-room.” These interrogatories, and the answers to them, were not annexed to the policy, but were put on file in the office ; and the policy purported to have been “made and accepted upon the representation of the said assured, contained in his application therefor, to which reference is to be had,” &c., &c.
 

 No new representations appear to have been made at the different renewals, but only a general reference to representations, like that just named; and in three or four instances, when the policy was in a new name, a specific statement was inserted that the insurance was entered into “ agreeably to the representations heretofore made by Jonathan Stearns.”
 

 Referring to the record and preliminary statement of this case for other details, the plaintiff objected first to the competency of parol evidence, which was offered to pmve that the representations signed by Stearns, and on file wit >. his application, were those made by him, and to the instruction of the court, that, if they were adopted by the plaintiffs, the present policy as well as the original one must be considered as found- < d on them and void, if they were not true.
 

 It will be proper, then, to consider first whether this parol evidence was competent for the purpose for which it was offered.
 

 
 *246
 
 Without meaning to impugn the great elementary principle, that written instruments are not to be varied or contradicted by parol, it suffices to say here that this testimony was not admitted to vary or contradict any portion of what had been written. See Phillips
 
 v.
 
 Preston, 5 Howard, 291.
 

 It merely went to identify what the writing in the policy referred to, as a part or parcel of the contract, like a reference in one deed or contract to another deed or contract. 13 Wendell, 92; Jennings
 
 v.
 
 Chenango Ins. Co., 2 Denio, 82; Phillips on Ins. 47; 16 Pick. 502; 1 D. & E. 343; 2 Brod. & Bingh. 553; 4 Russ. 540; 20 Pick. 121; 1 Paige, 291; 8 Metcalf, 114, 350; 4 Howard, 353; 3 Barn. & Ald. 299; Wigram on Ext. Ev. 54, 55; 1 Hen. Bl. 254; 2 Hen. Bl. 577; 6 D. & E. 710; 1 Duer on Ins. 74.
 

 It added to what was written nothing, it subtracted nothing, it changed nothing, and we think its admission was legal.
 

 In the next place, the instruction that the plaintiffs were bound by those representations, if adopting them subsequently at the time of making .their insurance, accorded with both the law and equity of the transaction. If they adopted them and induced the defendants to act on them, it would operate fraudulently to let them be- disavowed after a loss. So if the plaintiffs ratified them, in their subsequent application, if no other representations were made or relied on except these, if their attention was called to these; if the bank was a party in interest through all these insurances, without repudiating these representations, and if these were the only set of representations used in all of them, it surely must comport with justice, as well as law, to have them govern.
 

 The cases of like subsequent adoptions and ratifications of what had been done before by others are very numerous. Among them see those collected in Story on Agency, §§ 252, 253. Even “ slight circumstances and small matters will sometimes suffice to raise the presumption of a ratification.” Ward
 
 v.
 
 Evans, 2 Ld. Raym. 928; 3 Wash. C. C. 151; 13 Wend. 114; 3 Chitty Com. L. 197.
 

 This view of the case, standing alone, would entitle the defendants to be discharged, for the picking-room, contrary to these representations, had a lamp, and indeed lamps, in it; and their use was proved to be the cause of the fire which destroyed the factory.
 

 We should, therefore, affirm the judgment below without further inquiry, did not the bill of exceptions disclose another ruling, which, as the record now stands, requires consideration. When the judgment below is, as here, well sustained by the
 
 *247
 
 opinion entertained on a decisive point, it is usually of no consequence whether another point was correctly ruled or not. But as the bill of exceptions in this case was drawn up by the plaintiffs, it states that the jury were instructed to find a verdict for the defendants on the last ground, if on the facts the first one failed; and hence, looking to the record, the -last ground may have been passed on by the jury, and have influenced their verdict. To be sure, the report of this case below (in 2 Woodb. & Min. 472) shows that a verdict was taken by agreement of parties, or only
 
 proforma,
 
 in order to bring the questions of law to the Supreme Court; and therefore, that no jury could in truth in this case have been thus influenced or misled. Yet this fact not appearing on the record brought here, the case, till revised and corrected below in .this particular, must be considered as if the jury had actually examined both grounds, and had really decided upon them. But even on that hypothesis, if the second point was properly ruled, no occasion would exist for sending the case back for correction in the statement as to the verdict, in connection with the first point. ^
 

 Whether it was properly ruled or not involves a question of much novelty, being in one aspect of it a case, perhaps, of the first impression, and without any precedent to govern us, and is of so much importance in insurances as to deserve great caution in settling it. From the report of the case below, before referred to, the Circuit Court, though alluding to the last point, do not appear to have gone into any critical discussion and opinion on it.
 

 But the bill of exceptions being so drawn up as to exhibit a positive instruction given on it by that court to the jury, it is necessary for us to examine with care whether an instruction like that presented here could legally be given.
 

 First, then, what is the substance of that supposed instruction?
 

 It is, that if no representations were made or adopted by the plaintiffs, they would not be entitled to recover, if lamps were in truth used in the picking-room, which were conceded' to be material to the risk, and this use was .known to the plaintiffs and not to the defendants, and this use was meant to be continued, and was continued, and caused the present loss. In the next place, what must be considered the law- in relation to this subject ? Little doubt exists, that, when representations are made or adopted, the denial in them of a material fact, such as here, that any lamp was used in the .picking-room, where one or more was in truth used, makes the policy void, not only
 
 *248
 
 for misrepresentation, but misdescription and concealment. 1 Marshall on Ins. 481; Ellis on Fire and Life Ins. 58; Dobsen
 
 v.
 
 Sotheby, 1 Moody & Malk. 90; 6 Cowen, 673; 4 Mass. 337.
 

 A false-representation avoids the policy, because it either misleads or defrauds. Livingston et al.
 
 v.
 
 Mar. Ins. Co., 7 Cranch, 332.
 

 In such a state of things, also, the insured — knowing that he is asked for representations to enable the underwriter to decide properly whether he will insure at all, and if so, at what premium — must suppress nothing material to the ri^k, or the, underwriter will not stand on equal grounds with himself, and will be forced to act in the dark more than himself, and probably to misjudge. 1 Marshall on Ins. 473, 474, note; Lynch
 
 v.
 
 Dunsford, 14 East, 494; Maryland Ins. Co.
 
 v.
 
 Ruden’s Ad., 6 Cranch, 338; and Livingston
 
 v.
 
 Mar. Ins. Co., Ibid. 279; Columbian Ins. Co.
 
 v.
 
 Lawrence; 10 Peters, 516; McLanahan
 
 v.
 
 Universal Ins. Co., 1 Peters, 185; 2 Peters, 59; 2 Duer, 388, 379, 411; 2 Caines, 57; 1 Wash. C. C. 162.
 

 Concealment thus would operate in some cases as a fraud, and in all will make the risk very different from what the insurer knew and agreed to. 3 Burr. 1905; Ellis on Fire and Life Ins., 38.
 

 But the- hypothetical position presented by this record is that the law would be the same, provided no representations whatever were made, and in this form it does not,' in the- state of facts exhibited in the record, meet with the sanction of this court. The chief controversy appears to have been-concerning the first point; and when this last question was made a part of the case by agreement of counsel, it was not known Whether this court would consider the original representations by Stearns as* adopted, and thus binding o.n those subsequently insured. Independent, of those, none appear to have been made or asked.
 

 Éepresentations, however, in insurances, it is well' known, almost invariably 'exist, either written or parol. Columbian Ins. Co.
 
 v.
 
 Lawrence, 2 Peters, 49; S. C., 10 Peters, 515. But they are not usually, named ór incorporated in the policy, except on the continent of Europe. 3 Kent, 237; 9 Barn. & Cress. 693.
 

 It is fair to presume, that they took place in all the reported cases on insurance, though often not named, unless the contrary is expressly stated, as they are in general “ the principal inducements to- contract, and furnish the best grounds upon which the premium can be calculated.” (1 Marsh, on Ins. 450.)
 

 But the relation of the parties seems entirely changed, if the
 
 *249
 
 insurer asks no information and the insured makes no representations. That is the chief novelty in this question, as hypothetically stated in the bill of exceptions. We think that the governing test on it must be this, ■— it must be presumed that the insurer has in person or by agent in such a case obtained all the information desired as to the premises insured, or .ventures to take the risk without it, and that the insured, being asked nothing, has a right to presume that nothing on the risk is desired from him.
 

 This rule must not be misapprehended and supposed to rest on a principle different and somewhat ordinary, that insurers are always to be expected to possess some general knowledge of such matters as they deal with, independent of inquiries to the ássured. 8 Peters, 582.
 

 Nór on the position well settled, that the insurer must be presumed to. know what is material'in-the course of any particular tráde, — its usages at home and abroad, and those transactions which are public, and equally open- to the knowledge of both parties. Hazard’s Ad.
 
 v.
 
 New England Mar. Ins. Co., 8 Peters, 557; 2 Duer on Ins. 379, 478; 3 Kent’s Com. 285, 286; Green
 
 v.
 
 Merchants’ Ins. Co., 10 Pick. 402; 4 Mason, C. C. 439; Buck et al.
 
 v.
 
 Chesapeake Ins. Co., 1 Peters, 160. Nor on any special usage proved, as in Long
 
 v.
 
 Duff, 2 Bos. & Pul. 210, that it was, in a case like this," the duty of
 
 “
 
 the underwriter to obtain this information for himself.”
 

 But when representations are not asked or given, and with only this general knowledge the insurer chooses to assume the risk, he must in point of law be deemed to do it at his peril. It has been justly remarked, in a case somewhat like this in principle, — “ With this knowledge, and without asking a question, the defendant underwrote; and by so doing he took the knowledge of the state of the place upon himself,” &c. 1 Marshall on Ins. 481, 482; Carter
 
 v.
 
 Boehm, 3 Burr. 1905.
 

 In cases of fire insurance, also, the underwriters may be considered as more likely to do this than in marine insurance ; because the subject insured is usually situated on land and nearer, so as to be examined easier by them or their agents; and the circumstances connected with it are more uniform and better known to all. 1 Har. & Gill, 295; Burrit
 
 v.
 
 Saratoga M. F. Ins. Co., 5 Hill, 192.
 

 It is true, that, from what is reasonable and just, some exceptions must exist to this general rule, though none of them are believed to cover the present case. Thus the insurer must be supposed, if no special information has been asked or obtained, to take the risk, on the hypothesis that nothing unusual exists
 
 *250
 
 enhancing the risk; and hence, as in this case, if lamps are used in the picking-room, which do enhance it, he must show that their use in the manner practised was unusual or not customary, and then, though no representations had been asked or made, he would make out a case, where it was the duty of the insured to inform him of the fact, and where
 
 suppressio veri
 
 would be as improper and injurious as
 
 suggestio falsi.
 
 Livingston
 
 v.
 
 Mar. Ins. Co., 6 Cranch, 281.
 

 So if any extrinsic peril existed, outside and near a building insured, and which increased the risk, the insured should communicate that, though not requested. Bufe
 
 v.
 
 Turner, 6 Taunt. 338; Walden
 
 v.
 
 Lou. Ins. Co., 12 Louis. 134. But as to the ordinary risks connected with the property insured, if no representations whatever are asked or given, the insurer must, as before remarked, be supposed to assume them; and, if he acts without inquiry anywhere concerning them, seems quite as negligent, as the insured, who is silent when not requested to, speak. The conclusions on the whole case then ate, that the defendants are entitled to be discharged on the first ground upon the merits; because the plaintiffs were interrogated in writing on this very fact and risk, or others were, whose answers they adopted; and the truth was not disclosed in their representations in reply, when it is conceded to have been material to the risk; and therefore, by the express stipulations of this policy, as well as by the general principles of the law. of insurance, the plaintiffs should not recover. But our judgment cannot be rendered on this conclusion, standing alone, because the second point is connected with it in the form before explained. Again, the defendants would be • entitled to be discharged under the second point on the ground, which accords with the truth here, that representations were really made on this subject; but not, if none whatever were made, according to what is hypothetically suggested in the record. The judgment below must, therefore, be reversed, for the purpose of correcting what is defective in the manner of stating how the verdict was taken and how the last question stood by itself on the facts proved; and the case must be remanded to the court below, with instructions to take all proper steps to carry into effect the views presented in this opinion.
 

 Order.
 

 This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Massachusetts, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this
 
 *251
 
 court, that the judgment of the said Circuit' Court in this cause be, and the same is hereby, reversed, with costs, for the purposes of correcting what is defective in the manner of stating how the verdict was taken, and how the last question stood by itself on the facts proved, and that this cause be, apd the same is hereby, remanded to the said Circuit Court for further proceedings to be had therein in conformity to the opinion of this court.'