No. 13,792.

## THE CONTINENTAL INSURANCE COMPANY v. MUNNS.

INSURANCE.—*Sale of Insured Property.*—*Assignment of Policy.*—Upon a sale and transfer of property covered by a policy of insurance, and an assignment of the policy to the purchaser, duly assented to' by the insurance company, a new and original contract of indemnity arises between the company and the assignee, which the latter may enforce without, regard to what may have occurred prior to the assignment.

SAME.—*Encumbrances.*—*Forfeiture by Assignor.*—*Rights of Assignee.*—Where the owner of insured property mortgages it, without notice to the insurer and in violation of a condition in the policy, after which he sells the property and assigns the policy to the purchaser, who obtains the assent of the insurer to the assignment, the latter at the time of giving its assent having no actual knowledge of the mortgage, the insurer can not set up the previous forfeiture by the assignor to defeat an action by the assignee.

SAME.—*Inquiry as to Encumbrances.*—An applicant for insurance is not bound, unless inquired of, to disclose whether or not the property insured is encumbered.

From the Montgomery Circuit Court.

B. Crane and A. B. Anderson, for appellant.

H. H. Dochterman, for appellee.

MITCHELL, J.—This is an appeal from a judgment rendered by the Montgomery Circuit Court in favor of William Munns against the Continental Insurance Company. The questions for decision arise upon the following facts: On January 17th, 1883, the insurance company above named delivered to John Bittle a policy of insurance, by which it insured his dwelling-house and its contents, consisting of household furniture, etc., his barn, shed and granary, and their contents, severally, consisting of farming utensils, wagons, carriages, grain, horses, etc., for a period of five years for a gross premium of $37.

At the time the policy was issued Bittle owned the farm

upon which the several buildings insured were situate, and the personal property covered by the policy was in the buildings therein described, the insurance being apportioned in specified sums upon the several buildings and the property therein situate.

The policy contained a stipulation of the following purport: "If the applicant shall mortgage, or otherwise encumber the property hereby insured, without notice to and consent of the company endorsed hereon, this policy shall become null and void." On the 27th day of June, 1885, Bittle, without notice to the company, and without its knowledge or consent, mortgaged the farm upon which the house, barn and other buildings insured were situate, to the Provident Life and Trust Company of Philadelphia, to secure a loan of $5,000. In the month of September following, he sold and conveyed the land, with the buildings thereon, to William Munns, for the consideration of $12,000, and in a few days thereafter, without any new consideration, transferred the policy of insurance to the purchaser. The latter soon afterwards presented the policy to the company's general superintendent, who endorsed its consent thereon that the policy might be assigned to the purchaser, subject to all the terms and conditions mentioned or referred to therein. The company had no notice or knowledge of the existence of the mortgage at the time it gave its consent to the transfer of the policy. On July 27th, 1886, the barn, shed and granary, and their contents, were consumed by fire, entailing a loss amounting to $1,700. After the destruction of the property, the company learned of the mortgage executed by Bittle, when it refused payment of the loss, on the ground that placing the encumbrance above mentioned on the property was a violation of the condition of the policy, which rendered it null and void.

Whether the judgment shall be affirmed or reversed depends upon whether or not the company can avail itself of the default of Bittle in an action on the policy by the plain-

tiff. It must be assumed, as a matter of course, that the latter, when he purchased the farm and took an assignment of the insurance policy, had knowledge of the mortgage on the land, and of the condition relating to encumbrances in the policy.

Imputing to him knowledge of these facts, the question remains, did he take the policy strictly as assignee, subject to all the infirmities, defences, or any forfeiture which the laches or default of the assignor may have imposed upon it? or did the assignment, with the consent of the company, constitute the policy in effect a new and original contract between the latter and the assignee, unaffected by any previous forfeiture that may have occurred? If the transfer of the policy simply substituted the assignee to the rights which the assignor then had in the contract, it may well be said that if the latter had no rights by reason of the forfeiture which occurred prior to the assignment, the mere transfer conferred no new rights on the assignee. If, on the other hand, the assignment of the policy, with the assent of the company, constitutes a new, original and independent contract between the assignee and the insurer, then it is quite clear that no act of forfeiture committed by the assignor before the sale, assignment and consent is available against the policy in the hands of the purchaser newly insured.

A contract of insurance is purely a personal engagement, by which the insurer, for a consideration paid, agrees to indemnify the person insured against loss arising from damage to his property by fire. The contract appertains to the person with whom it is made, and does not run with the property insured. *Nordyke & Marmon Co.* v. *Gery,* 112 Ind. 535 (5 Am. St. Rep. 27); *Cummings* v. *Cheshire, etc., Ins. Co.,* 55 N. H. 457.

It is abundantly settled that upon a sale and transfer of property covered by a policy of insurance, and an assignment of the policy to the purchaser, duly assented to by the company, a new and original contract of indemnity arises between the insurance company and the assignee, which the

latter may enforce without regard to what may have occurred prior to the assignment. The policy, it is said, in such a case, expires with the transfer of the estate, so far as it relates to the original holder, but the assignment and assent of the company thereto constitute an independent contract with the purchaser and assignee, the same in effect as if the policy had been reissued to him upon the terms and conditions therein expressed. *Wilson* v. *Hill*, 3 Metc. 66 ; *Fogg* v. *Middlesex, etc., Ins. Co.*, 10 Cush. 337 ; *Flanagan* v. *Camden, etc., Ins. Co.*, 1 Dutch. (N. J.) 506 ; *Cummings* v. *Cheshire, etc., Ins. Co.*, 55 N. H. 457 ; *Steen* v. *Niagara, etc., Ins. Co.*, 89 N. Y. 315 ; *Shearman* v. *Niagara, etc., Ins. Co.*, 46 N. Y. 526 ; *Hooper* v. *Hudson River, etc., Ins. Co.*, 17 N. Y. 424 ; *Ellis* v. *Council Bluffs Ins. Co.*, 64 Iowa, 507 ; Wood Insurance, sections 110, 366.

Where an estate is sold and the policy transferred to the purchaser, and upon notice to the insurer he assents to it, a new and original contract of indemnity arises to the assignee, which he may enforce in his own name. The policy in such case expires with the transfer of the title to the estate, but the assent of the insurer to the assignment of the policy constitutes a new contract. *Pratt* v. *New York, etc., Ins. Co.*, 64 Barb. 589 ; Flanders Fire Ins., 412, 484 ; *Foster* v. *Equitable, etc., Ins. Co.*, 2 Gray, 216.

Aside from the prohibitory clause, policies of insurance, prior to any loss, are not, in their nature, assignable from one person to another without the express consent of the insurance company issuing them. They are therefore subject to the common-law rule, the effect of which is, that where the assignee of a contract gives notice of the assignment to the other party to the instrument, and the latter assents to it, the transaction constitutes a new engagement between one of the parties to the contract and the assignee of the other, the terms of which are regulated and fixed by the original contract. *Fogg* v. *Middlesex, etc., Ins.*

*Co., supra; Wilson* v. *Hill, supra; Hooper* v. *Hudson River, etc., Ins. Co., supra;* Flanders Insurance, 484.

In order that a policy of insurance may be effectual, the insured must have an interest in the property covered by the contract of insurance, not only when the contract is entered into, but when the loss occurs. If the interest in the property and the interest in the policy become separated, the operation of the policy becomes suspended, and if a loss occurs while the policy is thus suspended, no recovery can be had. An assignment of an insurance policy without a transfer of the property insured, would be an idle ceremony so far as transferring to the assignee any beneficial interest in the contract. On the other hand, the transfer of the property insured suspends the operation of the policy, which becomes inoperative for want of a subject-matter to act upon, until by the assignment and assent of the company a new contract of insurance, embodying the same terms and conditions as the old, arises between the latter and the purchaser. The contract of insurance thus consummated arises directly between the purchaser and the insurance company, to all intents and purposes the same as if a new policy had been issued embracing the terms of the old. In such a case no defence predicated on supposed violations of the conditions of the policy by the assignor will be available against the assignee. Until the latter himself does some act, or permits a condition of things to exist in violation of the terms of the policy, he is not in default. *Ellis* v. *State Ins. Co.*, 68 Iowa, 578 (56 Am. R. 865), and *Insurance Co.* v. *Garland*, 108 Ill. 220, are not opposed to the conclusions above stated.

The case first cited involved a policy which contained a provision that " if the title of the property is * * * encumbered * * this policy shall be void." At the time the policy was assigned there was a mortgage on the property which remained upon it until after the loss. This condition, as the court well says, pertained to the character of the risk as it then was or should thereafter be, and when the assignee

became a party to the condition he virtually agreed that if there was then or should thereafter be an encumbrance on the property, he should not in case of loss be entitled to recover.

The contract provided against subsisting encumbrances as fully as it did against those which might be made thereafter, and the gist of the defence which the court sustained was that the encumbrance was allowed to remain. The court fully recognized the doctrine of its former decisions, which hold that an assignment of a policy with the assent of the insurance company creates a new contract, and that the assignee is not affected by the acts of the assignor.

The other case relied upon was predicated upon a policy which contained a stipulation to the effect that if " the assured shall allow the buildings herein insured to become vacant or unoccupied, and so remain, * * * this policy shall become void." It was properly held that this provision was imported into the new contract, and became a present agreement with the assignee, and that as he permitted the premises to remain unoccupied the company had the right to avoid the policy because he had violated his agreement. The distinction between the cases relied on and the present case is obvious. In those cases the defences were not predicated upon acts or defaults of the vendor, but upon violations of the terms of the policy by the vendee himself. The policy involved in the present case contained no provision against subsisting encumbrances. Future encumbrances alone were referred to, and the established rule is that conditions which create forfeitures will not be extended by construction. *Northwestern, etc., Ins. Co.* v. *Hazelett,* 105 Ind. 212 ; *Symonds* v. *Northwestern, etc., Ins. Co.,* 23 Minn. 491.

There is no pretence that the assignee made any misrepresentation concerning the condition of the risk at the time the company gave its assent to the assignment. The rule applicable is that a failure or neglect on the part of the insured to make known facts which the insurer may regard as ma-

terial to the risk, is not a breach of a condition in the policy, avoiding it in case of any omission to make known every fact material thereto, because the insured has a right to suppose that the insurer will make proper inquiries concerning all facts except such as are supposed to be known, or are regarded as immaterial. *Short* v. *Home Ins. Co.*, 90 N. Y. 16; *Burritt* v. *Saratoga, etc., Ins. Co.*, 5 Hill, 188; *Clark* v. *Manufacturers' Ins. Co.*, 8 How. 235.

In the case last cited the court said: "As to the ordinary risks connected with the property insured, if no representations whatever are asked or given, the insurer must, as before remarked, be supposed to assume them; and, if he acts without inquiry anywhere concerning them, seems quite as negligent as the insured, who is silent when not requested to speak."

An applicant for insurance is not bound, unless inquired of, to disclose whether or not the property insured is encumbered. As the public records usually give information in reference to such matters, he may assume that the insurer knew of any existing encumbrances, or deemed it immaterial whether or not the property was encumbered.

These conclusions lead to an affirmance of the judgment. Judgment affirmed, with costs.

Filed Sept. 17, 1889.