Gavin, J.
The appellee’s complaint sought to recover for the loss of a stock of goods by fire, against which it was insured by appellant. The answer was a general denial, and in addition thereto that there had been a breach of the condition of the policy by an existing incumbrance. To this answer appellee pleaded a waiver of the condition.
The general verdict was for appellee, with various an *625 swers to interrogatories, upon which judgment was ren•dered in his favor over appellant’s motion for new trial.
From the evidence it appears that the appellee made «oral application for the policy, no written application being required. The agent agreed to issue the policy, .and the premium was paid, but no policy was then delivered, it being afterward sent by mail. The appellee testifies that no questions were asked as to mortgages or incumbrances, and no statements made relative thereto by him; that he did not see the policy at the time and •did not know a mortgage would invalidate the policy by its terms. The agent, however, testified that when a former policy was issued, he had told appellee that he was prohibited by this company from taking mortgaged property, and on his application for this policy he asked him if everything was the same as before, .and he said yes.
When the policy was issued, the property, worth about $4,700, was subject to a mortgage for $528, executed about a month before, and duly recorded, which remained unpaid at the time of trial, but appellant had no knowledge of its existence until after the loss. The policy contained a provision of forfeiture if the property was incumbered unless so represented and expressed in the written part of the policy.
That this provision is valid and enforceable, can not be controverted. Bowlus v. Phenix Ins. Co., 133 Ind. 106; Continental Ins. Co. v. Vanlue, 126 Ind. 410; Continental Ins. Co., etc., v. Kyle, 124 Ind. 132; Geiss v. Franklin Ins. Co., 123 Ind. 172.
While the courts are averse to giving effect to forfeiture clauses, and will construe the contract most strictly against the company, resolving all doubts in favor of the policy-holder, we are not authorized to make a new con *626 tract for the parties, nor to disregard that which they have themselves created. Continental Ins. Co. v. Vanlue, supra, and authorities above cited; Dover Glass Works Co. v. American, etc., Co. (Del.), 29 Atl. Rep. 1039.
It is, however, equally the law that the valid and enforceable provisions of the contract may be waived, not only by express agreement, but by the conduct of the company. Evans v. Queen Ins. Co., 5 Ind. App. 198; Home Ins. Co., etc., v. Marple, 1 Ind. App. 411; Sweetser v. Odd Fellows, etc. Assn., 117 Ind. 97; Havens v. Home Ins. Co., 111 Ind. 90.
In determining whether a harsh and inequitable forfeiture clause, such as we have here, is to be deemed waived, the courts have generally applied the same liberal rule in favor of the insured as governs in the construction of the contract itself.
That knowledge of the fact which, by its terms, would avoid the policy, is a waiver of such provision, is conceded by appellee’s learned counsel. Havens v. Home Ins. Co., supra; Phenix Ins. Co., etc., v. Lorenz, 7 Ind. App. 266.
But counsel insist that nothing short of actual knowledge will suffice to accomplish this result.
In this view of the law they are not sustained by the weight of authority, nor have they any equity upon their side.
If the law is as they assert, then the company takes- and keeps the money of appellee and makes to him absolutely no return whatever.
The contract was, as appellant declares, void ab initio. No risk ever attached. The company hazarded nothing, it simply received appellee’s money and had that much clear profit in the transaction with no chance whatever of loss. The appellee, without having in any way deceived or misled the appellant, without having had his *627 attention called to the mortgage clause, with appellant apparently displaying at the time no interest whatever in the question of incumbrances, pays his money for an insurance policy expecting to get protection; relying upon appellant’s failure to make any inquiry, he depends upon this policy as an indemnity in case of loss, but when the loss comes discovers that he had no insurance. If the law really requires such a holding, then our province is but to declare it.
The law, however, does not demand so inexorable an adherence to the letter of the contract under all circumstances and all conditions.'
In quite a number of cases it has been adjudged that the failure of the company to inquire about or call any attention to some particular fact operates to relieve the insured from a forfeiture which would follow his omission to disclose it under the strict wording of his policy, although the fact was one material to the risk but not one unusual or extraordinary. Clark v. President, etc., 8 How. 235; Washington Mills, etc., Co. v. Weymouth, etc., Ins. Co., 135 Mass. 503; Guest v. New Hampshire Fire Ins. Co., 66 Mich. 98.
This doctrine was expressly approved in Continental Ins. Co. v. Munns, 120 Ind. 30, where Mitchell, J., says: ''The rule applicable is that a failure or neglect on the part of the insured to make known facts which the insurer may regard as material to the risk, is not a breach of a condition in the policy avoiding it, in case of any omission to make known every fact material thereto, because the insured has a right to suppose that the insurer will make proper inquiries concerning all facts, except such as are supposed to be known, or are regarded as immaterial.”
In these cases the fact depended upon as a forfeiture *628 came within, the terms of general language contained in the policy, declaring it thereby avoided.
For the purpose, doubtless, of meeting these and similar holdings, it became usual to insert in the policies special forfeiture clauses dependent upon the existence of particular facts specifically mentioned, as in the policy under consideration.
In Short v. Home Ins. Co., 90 N. Y. 16, one of these policies became the subject of controversy. It was therein provided that the policy should be void if the house became or remained vacant. It was then vacant and so remained until burned. There was no written application, no questions or statements as to occupation, but there was evidence that the agent made inquiries about such matters as he deemed material, lived in the same city and had ample opportunity to learn the facts.
The court said: “It is, perhaps, a legitimate inference that he did not deem it important or material and made the insurance without regard to its occupation. At least there was some evidence in this direction, and such being the case, it was a question of fact for the jury to determine whether the defendant's agent knew the condition of the premises or regarded it as of any consequence whether the premises were occupied or otherwise, and made the insurance without any reference whatever to the subject of occupation. If he did so then the condition as to the future vacancy or non-occupation was nugatory and may be regarded as waived.”
In O’Brien v. Ohio Ins. Co., 52 Mich. 131, the policy provided for its avoidance if there should be “any omission of or false representation by assured of title, incumbrance,” etc. Yet the court held that the company could not defend by reason of an existing incumbrance, because there was no written application, no questions *629 asked nor statements about incumbrances, and the insured was wholly ignorant of the clause.
In Hall v. Niagara Fire Ins. Co., 53 N. W. Rep. 727, the policy was by its terms to be void “unless consent in writing was indorsed thereon,if the insured should not be the sole and unconditional owner of the property,” the owner in fee simple of the ground upon which the building stood. The court says: “It is well settled in this State, at least, that an applicant for insurance is not required to show the exact condition of his title, unless requested so to do, that the failure to mention incumbrances, if not inquired about, the application being oral and no deceit being practiced, is immaterial.” It was then held that the clause could not be applied ‘ ‘to an existing state or condition of the property at the time that the policy was issued.”
In Wright v. Fire Ins. Assn., 31 Pac. Rep. 87, the policy contained a stipulation that it should be void and of no effect “if the property be a stock of merchandise and the same or any part thereof be or become mortgaged,” unless the company’s consent in writing should be indorsed upon the policy.
The company set up as an answer an existing incumbrance. To this the insured replied, claiming a waiver because there was no written application made by her, no question nor statements concerning incumbrances and no knowledge upon her part that the mortgage would invalidate her insurance. Under these circumstances it was decided, after quite an extended consideration of the question, that the company could not enforce the forfeiture.
In Wilcox v. Continental Ins. Co., 55 N. W. Rep. 188, and Beck v. Hibernia Ins. Co., 44 Md. 95, a different conclusion is reached. With much respect for the learning of the judges comprising those courts and *630 the force of the logic by which they are led to their conclusions, both the weight of authority and the strong-equities of the case lead us to hold that where there is no written application, no questions asked, no statements made and no knowledge by the assured that the existence of the mortgage was fatal to his insurance, the company must be deemed to have waived the provision for forfeiture by reason of the existing incumbrance.
With these views of the law, we find no error in the instructions when applied to the facts of.this case. It is, therefore, unnecessary for us to determine whether those given are too broad as abstract and general statements of the law. If the evidence of Langel, the agent, is to be taken, then there was affirmative concealment. If the appellee’s version of the conversations was correct, there was none, and the case comes within the rule which we have announced. This was the only one of those facts required to establish a waiver, which was in dispute. There was consequently no available error in the court’s making the case hinge upon this question.
Proofs having been actually made out and delivered to the company conforming substantially to nearly all, at least, of the requirements of the policy, and the company having based its denial of liability upon other grounds, it must be deemed to have accepted the proofs furnished as a substantial compliance with the requirements of the policy.
In the Commercial, etc., Co. v. State, ex rel., 113 Ind. 331, there was, as here, a general allegation of performance, supported by evidence, of a delivery of proofs and denial of liability upon other grounds, but objections afterward made to the proofs.
The law was thus declared by Elliott, J.: “Where proofs are delivered to the agent of an insurance company, and he denies the validity of the contract or as *631 serts that the policy has been cancelled, there isa waiver of objections to the proofs furnished.”
Filed Jan. 31, 1895.
The appellee testified in his own behalf as to'the value of his stock. To contradict him and to prove the value of the stock, appellant offered in evidence his tax list duly signed and sworn to. In refusing this the court did not err, according to the holdings of our Supreme Court, which we feel compelled to follow.
In Cincinnati, etc., R. R. Co. v. McDougall, 108 Ind. 179, that court announced that “Such lists are, however, not competent, either for or against the lister, as original, substantive evidence, to establish the value of a particular article of property for purposes other than taxation. Such valuations are to be regarded as having been made for a special purpose, and like admissions made for a like purpose, they are not competent as original evidence of value for any other than the purpose for which they were made, or in a case involving the question of valuation for taxation.”
This comes to us as the deliberate expression of the judgment of the Supreme Court, and we feel bound to give it effect so long as it stands unmodified, as it still does. It is true the court refuses there to determine whether such a list can be admitted to contradict the evidence of the party, that not being involved in the case, but we are unable to discover any ground, upon principle, for distinction between the two uses proposed to be ■made of this evidence. If not admissible to prove value •originally, it is only because it is to be regarded as privileged, “as an admisson for a special purpose.” If privileged in the one instance it must be deemed privileged in the other.
The judgment is accordingly affirmed.