## Niagara Fire Insurance Company v. Layne.

(Decided May 23, 1916.)

### Appeal from Pike Circuit Court.

1. Insurance—Fire Insurance—Effect of Mortgage on Property.—The concealment by the insured of the existence of an encumbrance or mortgage on property, when no inquiry is made by the company or statement by the insured, will not be fraudulent or avoid the policy unless the insured has notice of the incumbrance and it further appears that a person of ordinary prudence would have known that the existence of the encumbrance was material to the risk; and even then will not affect the validity of the policy unless the fact concealed was so material to the risk as that the company, according to the usual custom of companies, would not have issued the policy if it had known of the encumbrance.

2. Appeal and Error—Verdict In Insurance Case—When Excessive Will be Set Aside.—In a suit on an insurance policy where the amount to which the insured is entitled is fixed by contract and depends on the value of the property insured, the rule that the verdict will not be disturbed unless it is flagrantly against the evidence, has little application, because the jury can only fix the assessment at a sum within the limits of the policy sufficient to cover the actual loss sustained.

HAGER & STEWART and JAMES SOWARD for appellant.

J. J. MOORE for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

This is the second appeal of this case by the insurance company. The opinion on the former appeal may

be found in 162 Ky. 665. On the former appeal the question involved was whether the liability of the appellant insurance company on a policy issued on a stock of merchandise encumbered by a mortgage could be avoided on the ground that the company, at the time it issued the insurance, had no notice of the mortgage. In considering and disposing of this question the court, after referring to a number of authorities, said:

"From these authorities, it will be seen that the rule in this State is that if no inquiry is made and answered concerning encumbrances and no voluntary statement is made by the insured in regard thereto, the failure to disclose the existence of encumbrances on the property sought to be insured will not be ground for an avoidance of the policy, unless (1) the insured fraudulently failed to make such disclosure, and (2) unless the encumbrance was material to the risk assumed by the company.

"Such failure to disclose the existence of a lien material to the risk is fraudulent when the insured has knowledge of the encumbrance and the facts are such that an ordinarily prudent person would have known that the existence of the encumbrance was material to the risk.

"An encumbrance is material to the risk when, with a knowledge of the truth, an insurer acting in accordance with the usual practice or custom among insurance companies would not have issued the policy."

And further said: "In the case at bar, Layne bought the stock of merchandise from Collingsworth at the price of $2,050.00, giving him a mortgage thereon and also on a tract of land, to secure the sum of $1,833.00. And the materiality of this encumbrance is a matter to go to the jury upon proper evidence of the usage and custom of insurance companies."

In discussing the instructions that should be given on a re-trial of the case the court laid down the following principles for the guidance of the trial court: "If no inquiry concerning encumbrances has been made and answered and no voluntary statement in respect thereto has been made by the insured, section 639, Kentucky Statutes, is not applicable; where the applicant for insurance does answer inquiries or make voluntary statements, section 639 controls, and if the fact be material and the answer or statement untrue, the policy is avoided

whether the applicant knew the statement to be untrue or not and regardless of any intent to mislead or deceive the insurer (in the absence of estopping knowledge upon the part of the agent); but where no inquiry is made and answered concerning encumbrances, and no voluntary statement in regard thereto is made by the applicant for insurance, an avoidance of the policy will not be declared unless the insured fraudulently failed to disclose the encumbrance, and it was material to the risk; failure to disclose the existence of an encumbrance material to the risk is fraudulent when the insured has knowledge of the encumbrance, and the facts are such that an ordinarily prudent person would have known that the existence of the encumbrance, or other fact, is material to the risk when with a knowledge of the truth, an insurer acting according to the usual practice or custom among insurance companies would not. have issued the policy. * * *''

On the second trial of the case the evidence was substantially the same as on the first trial. It was further undisputed that Layne purchased the stock of goods from a man named Collingsworth who had a policy of insurance in the appellant insurance company on the stock of goods and that when the sale was made Collingsworth with the consent of the company transferred the insurance to Layne. It was further undisputed that Collingsworth took from Layne a mortgage on the stock of merchandise to secure the purchase price, and that the company did not know of the existence of the mortgage at the time the transfer of the insurance policy to Layne was made. It was also undisputed that the company did not make any inquiry concerning the existence of a mortgage or encumbrance on the merchandise, nor did either Layne or Collingsworth make any statement to the company in relation to the mortgage or any encumbrance.

With the evidence in this condition, the court instructed the jury as follows: ''No. 2. The court instructs the jury that failure to disclose the existence of a lien material to the risk is fraudulent when the insured has knowledge of the encumbrance and the facts are such that an ordinarily prudent person would have known that the existence of the encumbrance was material to the risk; and that an encumbrance is material to the risk when, with knowledge of its existence, an insurer,

acting in accordance with the usual practice and custom among insurance companies, would not have issued the policy.

"If the jury believe from the evidence that at the time of giving consent to transfer of the policy in suit the agent of the company did not know of the existence of the mortgage upon the stock of goods, and that the existence thereof was material to the risk as above herein defined, and that the agent would not have consented to transfer of the policy, if he had known that the stock of merchandise was encumbered with the mortgage; and if the jury further believe from the evidence that Mose Collingsworth concealed from the agent of the defendant company the existence of said mortgage, and that said concealment was fraudulent, then the jury will find for defendant."

The objection urged to this instruction by counsel for the insurance company refers to that part of it reading, "and if the jury further believe from the evidence that Mose Collingsworth concealed from the agent of the defendant company the existence of said mortgage, and that said concealment was fraudulent, then the jury will find for defendant." The argument is that the jury should have been instructed that if the existence of the mortgage was concealed, the policy was avoided, although the concealment was not fraudulent. The part of the instruction objected to must of course be read in connection with the beginning of the instruction, which advised the jury that "failure to disclose the existence of a lien material to the risk is fraudulent when the insured has knowledge of the encumbrance and the facts are such that an ordinarily prudent person would have known that the existence of the encumbrance was material to the risk." When so read the instruction, taken as a whole, follows the direction given by the court in the opinion. It was there said that the failure of the insured to advise the insurance company of the existence of an encumbrance on the property sought to be insured would not avoid the policy, unless "(1) the insured fraudulently failed to make such disclosure, and (2) unless the encumbrance was material to the risk assumed by the company," and that "the failure to disclose the existence of an encumbrance material to the risk is fraudulent when the insured has knowledge of the encumbrance, and the facts are such that an ordi-

narily prudent person would have known that the existence of the encumbrance was material to the risk.''

So that the rule laid down in the opinion, and now reaffirmed is that the existence of a mortgage will not avoid the policy when no inquiry is made by the company and no statement is made by the insured, unless the insured has knowledge of the encumbrance and it further appears that an ordinarily prudent person would have known that the existence of the encumbrance was material to the risk. When the insured has this character of knowledge, then his concealment of the existence of the encumbrance from the insurance company, or his failure to inform the insurance company of its existence, is fraudulent and will avoid the risk if the encumbrance was material to the risk and the company, according to the usual practice or custom of insurance companies, would not have issued the policy if it had known of the encumbrance.

If an ordinarily prudent person would not have known that the existence of the encumbrance was material to the risk or if its existence was not in fact material to the risk, the failure to inform the company of the encumbrance will not be fraudulent, nor will the concealment of the encumbrance avoid the policy. An insurance company knows exactly the conditions in its policy and on what character of property it will take insurance and what character of encumbrance or other defect in the title will cause it to decline the insurance, and it should make inquiry of the insured of any fact it deems material to the risk and put him on notice as to conditions it desires information concerning. And when it issues the insurance without making any inquiry of the insured concerning encumbrances or other defects in the title, it will not be heard to say that the existence of the encumbrance or defect avoided the policy, unless the insured knew of the encumbrance or defect in the title and they were in fact material to the risk; and it further appears that a person of ordinary prudence would have known that they were material to the risk and with this knowledge he concealed their existence from the company. It must further appear that the fact concealed was material to the risk, because to avoid the policy there must be the fraudulent concealment of a material fact. The two things must concur.

The next ground urged for reversal is that the verdict is flagrantly excessive. There were two insurance policies of equal amounts on the merchandise destroyed by the fire, one of these policies being held by the appellant insurance company, and consequently it was liable for one-half of three-fourths of the loss, the other company being liable for the other one-half. On the first trial the jury fixed the value of the goods destroyed at $1,100.00 and found a verdict against the appellant insurance company for one-half of that amount, $550.00. On the second trial the jury fixed the value of the goods at $1,600.00 and returned a verdict against the appellant insurance company for $800.00.

The evidence as to the value of the goods destroyed by fire is very unsatisfactory. The insured, Layne, had little or no experience in the mercantile business and his books only showed in a haphazard way the amount of stock on hand and the sales. It appears, however, that when the goods were purchased by Layne on February 10, 1912, their value was estimated at $2,050.00, and that at this price they were sold by Collingsworth to Layne. Collingsworth also testifies that goods to the value of about $150.00 were not taken into consideration in fixing the price at $2,050.00. He further testifies that there should be added to the value of the goods $150.00 for cost of transporting the goods from the railroad to the store in which they were located. So that this would put the value of the goods at $2,350.00. Soon after he bought the goods, Layne purchased groceries amounting to $324.00 and medicine amounting to $10.00, which added to the value of the goods at the time of the sale would make $2,684.00.

Layne told Evans, the fire marshal, that his sales would amount to about $14.00 a day; and Norman, who clerked for Layne, said the sales would amount to between $10.00 and $30.00 a day for at least a few months. But if the average daily sale from the time of the purchase of the goods on February 10th until the time of the fire on October 10th, should be put at $6 a day, after deducting the profit made on the sales, it would appear that between the time of the purchase and the fire the value of the goods had been reduced $1,272.00, which deducted from the value at the time of the sale would leave the value of the goods at the time of the fire at $1,412.00. The insurance only covered three-fourths of

the loss, so that the value of the goods covered by the insurance would be $1,059.00 and the amount due by the appellant company $529.50.

Looking at the matter from any standpoint, we are confident that the value here fixed equals fully the value of the goods destroyed by fire, for which the appellant was liable, if not more. It is true that what is called an invoice was taken of these goods in September, 1912, but this so-called invoice, although competent evidence in behalf of Layne, really throws no intelligent light on the value of the goods, and we put it entirely out of view in trying to estimate their value. In cases like this where the amount to which the insured is entitled is fixed by contract and depends on the value of the property insured at the time of the loss, the jury assessing the amount of recovery should not exceed the value of the property destroyed by the fire. The rule that we will not disturb a verdict unless it is flagrantly against the evidence, although it may be more than we think should be allowed, has very little application to cases like this. The insured should be able to show in some intelligent, satisfactory way the value of the loss he has sustained, so that the jury, in coming to make up their verdict, can fix the assessment at a sum within the limits of the policy sufficient to cover the actual loss sustained. This is all the insured is entitled to.

Having reached the conclusion that the evidence for Layne shows that the loss he sustained was substantially less than the amount allowed by the jury, the judgment is reversed with directions for a new trial.