### HARE & CHASE, Inc., v. NATIONAL SURETY CO.

#### No. 399.

Circuit Court of Appeals, Second Circuit. July 29, 1932.

910

Lord, Day & Lord, of New York City (Henry De Forest Baldwin, Sherman Baldwin, and Woodson D. Scott, all of New York City, of counsel), for National Surety Co.

Hartwell Cabell, of New York City (Cabell, Ignatius & Lown, of New York City, and Joseph S. Clark, Sr., and Joseph S. Clark, Jr., both of Philadelphia, Pa., of counsel), for Hare & Chase, Inc.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

The plaintiff's appeal presents a single question of law, namely, the correctness of the District Court's ruling that the plaintiff is estopped from claiming that losses arising from taxicab obligations acquired by Hare & Chase, Inc., from the General Finance Corporation are within the coverage of the insurance contract in suit. This ruling is based upon findings of fact respecting the plaintiff's representations and silence while the contract was being negotiated, and such findings are not now challenged. Since the facts appear in detail in the thorough and scholarly opinion of the District Court reported in 49 F.(2d) 447, it will suffice here to recapitulate them briefly.

Hare & Chase, Inc., was engaged in the business of financing sales of motor vehicles purchased on the installment plan. Up to the summer of 1924 substantially all its financing related to passenger automobiles of well-known makes. At that time it extended its business to include the rediscounting for General Finance Corporation of notes secured on fleets of taxicabs. Beginning in 1920, National Surety Company issued contracts of insurance, in the form of "ultimate loss bonds," by which it agreed to indemnify Hare & Chase against loss resulting from defaults on its automobile paper. In all there were four such bonds. The present action is upon the one last issued, effective from January 1, 1925, until its cancellation in February, 1927. The prior bonds gave coverage to only such paper as the insured reported to the insurer, and the insured was not obliged to report any paper which it did not wish to have covered. Premiums were figured on the amount reported. None of the General Finance Corporation business was reported or covered under these prior bonds. But the 1925 bond, we are to assume for the purpose of considering the defense sustained below, covered all the insured's financing. Negotiations for this bond began in the spring of 1924, and continued until its execution in January, 1925. The main points of negotiation were that the plaintiff wanted to obtain a reduction in the premium rate and the defendant an increase in the "deductible," that is, in the initial loss to be borne by the insured before liability of the insurer should attach. In the words of the court below, "the parties were negotiating

the 1925 bond with the background of their mutual experience under the earlier bonds." Yet during the protracted negotiations the plaintiff did not disclose to the defendant that it had entered into a contract with General Finance Corporation to rediscount taxicab paper, nor the fact that it held more than $1,-000,000 of such paper on January 1, 1925, when the contract in suit became effective, although Mr. Hare knew that the defendant considered paper secured on fleets of taxicabs an inferior risk to paper secured on individual pleasure cars. His silence, however, was not intentionally fraudulent, because he did not appreciate that the 1925 contract differed from the earlier contracts in respect to coverage; he thought that only such paper as was reported would be insured, and he did not desire to insure the General Finance Corporation paper. Accordingly, neither before execution of the 1925 bond, nor at any time thereafter prior to its cancellation, was the rediscounted taxicab paper reported, nor was it taken into account in figuring and paying premiums. But after Hare & Chase had suspended business and put their affairs in charge of a reorganization committee, the error was discovered, payment of the additional premium was tendered, and a claim was presented for some $3,000,000 of losses sustained on account of such taxicab paper. In defense of this claim the defendant sets up Mr. Hare's silence as to facts material to the risk. By consent the issue was referred to the equity side of the court to be heard with the defendant's claim for a reformation of the contract so as to include a provision requiring the plaintiff to report all paper as a condition to coverage. As already stated, reformation was denied, but the defense of concealment was sustained.

The question presented is whether an insured who intentionally fails to disclose material facts because of his belief that the insurance is not to cover the undisclosed risk and who pays no premium for such risk until after loss thereunder has been incurred may establish a claim in respect to such a risk. In our opinion it was properly answered in the negative.

An insurance contract is a contract uberrima fides; hence known changes in conditions material to the risk which occur between the opening of negotiations for insurance and the issuance of the policy must be divulged. Stipcich v. Metropolitan Life Ins. Co., 277 U. S. 311, 316, 48 S. Ct. 512, 72 L. Ed. 895. This rule, originating in marine insurance, was extended in England and in a few early American cases to other types of insurance. See Vance, Handbook on Insurance (1930 Ed.) pp. 339–341. In Lindenau v. Desborough, 8 Barn & Cr. 586, Justice Bayley declared: "I think that in all cases of insurance whether on ships, houses, or lives, the underwriter should be informed of every material circumstance within the knowledge of the assured; and that the proper question is, whether any peculiar circumstance was in fact material, and not whether the party believed it to be so."

The reasons underlying the rule are expressed in the leading case of Carter v. Boehm, 3 Burr. 1905, where Lord Mansfield explained that insurance is a contract upon speculation, and, since the special facts upon which the contingent chance is to be computed most commonly lie in the knowledge of the insured only, the underwriter proceeds upon confidence that he does not hold back any known fact affecting the risk, and is deceived if such a fact is concealed, even though its suppression should happen through mistake and without fraudulent intention. While this principle still persists in full vigor in marine insurance, it has been relaxed, at least in the United States, in the case of fire and life policies because of the practice of insurers to make inspections or ask questions which may reasonably be supposed by the insured to produce whatever information the insurer wants. See Stipcich v. Metropolitan Life Ins. Co., supra; Clark v. Manufacturers' Ins. Co., 8 How. 235, 248, 12 L. Ed. 1061; Penn Mutual Life Ins. Co. v. Mechanics' Savings Bank & Trust Co., 72 F. 413, 434–441, 38 L. R. A. 33 (C. C. A. 6). In the case last cited Judge Taft said at page 441 of 72 F., that the modern tendency is "to require that a non-disclosure of a fact not inquired about shall be fraudulent, before vitiating the policy." The plaintiff contends that this relaxation now represents the general rule applicable to all insurance, except marine. We do not so understand the law. We think the marine rule is exceptional only because in other types of insurance the applicant usually may honestly consider himself discharged from any duty of affirmative disclosure about matters concerning which he has not been interrogated. Where that is not the case, the rule of uberrima fides should still be enforced. In the case at bar the defendant did not set a questionnaire to the plaintiff which he might assume to be exhaustive. This type of insurance business has not developed to a point where, as is true with fire and life insurance, the issuance of a policy is based up-

on the answers made to questions contained in a standard form of application. See Gates v. Madison County Mutual Ins. Co., 5 N. Y. 469, 474, 55 Am. Dec. 360; Rawls v. American Mutual Life Ins. Co., 27 N. Y. 282, 295, 297, 84 Am. Dec. 280; Browning v. Home Ins. Co., 71 N. Y. 508, 512, 27 Am. Rep. 86; Short v. Home Ins. Co., 90 N. Y. 16, 20, 43 Am. Rep. 138; Continental Ins. Co. v. Ford, 140 Ky. 406, 131 S. W. 189, 191; Richards, Insurance (2d Ed.) p. 57. The negotiations preceding the execution of the bond in suit extended over a considerable period, and were conducted, as the court below said, "on the basis of an apparently full disclosure" by the insured. Mr. Hare actively assisted in the drafting of the bond. Nor was the rediscounting of taxicab fleet paper so common a trade usage that the insurer must be charged with knowledge that it was part of the applicant's business and be supposed to intend to take that risk if no special information was asked. See Clark v. Manufacturers' Ins. Co., 8 How. 235, 249, 12 L. Ed. 1061; Hartford Protection Ins. Co. v. Harmer, 2 Ohio St. 452, 473, 59 Am. Dec. 684. On the contrary, the negotiations were conducted on the assumption that the paper to be covered was of the same character as it had been in the past, and Mr. Hare knew that the insurer considered taxicab paper an inferior risk. Had he believed that such paper was covered, his failure to disclose the existence of it would have been actually fraudulent. Believing that it was not, he was morally innocent; but legally he was at fault if his duty was to disclose all that was material to the actual risk as distinct from the risk he supposed the insurer was assuming. Probably the rule requiring that fraudulent intent be proved to support the defense of concealment in fire and life insurance cases rests largely upon the fact that ordinarily the insured has not sufficient acquaintance with the insurance business to enable him to judge when the insurer will consider a fact material to the risk. See West Rockingham Mutual Fire Ins. Co. v. Sheets & Co., 26 Grat. (Va.) 854, 870; Wytheville Ins. Co. v. Stultz, 87 Va. 620, 13 S. E. 77, 80; Penn Mutual Life Ins. Co. v. Mechanics' Savings Bank & Trust Co., supra, at page 435 of 72 F.; Keatley v. Grand Fraternity, 198 F. 264 (D. C. Del.); Pelzer Mfg. Co. v. Sun Fire Office, 36 S. C. 213, 15 S. E. 562, 583. Where the insured has paid premiums in reliance upon coverage, it would be harsh to disallow recovery on the policy if the insured neither knew nor ought to have known that he was guilty of suppressing information in whose existence the insurer had a legitimate interest. Ordinarily proof of knowledge of the materiality of the fact concealed by the insured is strong, if not conclusive, evidence of intent to defraud. See Mallory v. Travelers' Ins. Co., 47 N. Y. 52, 56, 7 Am. Rep. 410; Penn Mutual Life Ins. Co. v. Mechanics' Savings Bank & Tr. Co., supra, at page 435 of 72 F.; Queens Ins. Co. v. Cummins, 206 Ky. 300, 267 S. W. 144; 3 Joyce, Insurance (2d Ed.), p. 2986. In the case at bar the insured has not paid premiums in reliance upon a supposed coverage now endangered by a concealment for which the insurer is largely responsible; on the contrary, the insured failed to pay premiums on the risk concealed because of a belief that it was not covered by the bond, and in concealing the very risk now sought to be covered was as well aware of its materiality as the insurer. The differences referred to distinguish the present situation from those in which an actual fraudulent intent must be shown, and hence require the application of a stricter rule of disclosure.

If knowledge of the materiality of the facts concealed is unimportant, as said in the passage above quoted from Lindenau v. Desborough, the insured was bound to disclose them; and, even if knowledge of materiality is important, but means only what a reasonable person in the insured's position would have supposed, as intimated by this court in Btesh v. Royal Ins. Co., 49 F.(2d) 720, 721 [see, also, Niagara Fire Ins. Co. v. Layne, 170 Ky. 339, 185 S. W. 1136], still he was bound to disclose, for the plaintiff takes the position that the contract of insurance very clearly declares that all automobile paper is within its coverage and that this was called to Mr. Hare's attention by letter. Hence a reasonable person in Mr. Hare's position should have appreciated the relevancy to the risk of the change in character of the insured's business. Elementary principles of fair dealing require either that the risk be limited as the insured supposed it to be or that, if enlarged to the language used, the condition of disclosing material facts be satisfied. The insurer was deceived as much as though intentional suppression had been morally fraudulent. Under the circumstances shown, the defense was properly sustained.

No authority contradicting this conclusion has been cited. The cases relied upon by the plaintiff have been adequately distinguished in the opinion below, and need no further comment. Nor do we find it necessary to consider the defendant's appeal, since

affirmance of the injunction gives all the relief sought by a reformation of the bond.

Decree affirmed.