GEORGE BECK and HENRY BOLTE, trading as BECK & BOLTE *vs.* THE HIBERNIA INSURANCE COMPANY OF OHIO.

*Fire insurance Policy avoided by the failure of the Insured to disclose to the Insurer the existence of Mortgages on the property Insured.*

A policy insuring certain buildings therein particularly described, against loss or damage by fire, provided that the conditions thereunto annexed, should form part of the instrument, and were to be resorted to in order to explain the rights and obligations of the parties to it. By one of the conditions it required every applicant for insurance in the company, to state any encumbrance that might exist on the property to be insured; and by another, it declared that "if any person insuring any building or goods in this office, shall make any misrepresentation or concealment, such insurance shall be void." Prior to, and at the time the policy was issued, there were two mortgages on the insured buildings, the existence of which was never communicated to the insurance company or its agent. The main building insured was destroyed, and the building adjoining greatly damaged by fire, during the time covered by the policy. In an action by the insured to recover on the policy, it was HELD:

That the failure by the assured to disclose the existence of the mortgages, avoided the policy and defeated the action.

APPEAL from the Superior Court of Baltimore City.

This suit was instituted by the appellants upon a policy of insurance for $2500, issued by the appellee. The facts of the case are sufficiently stated in the opinion of the Court.

*Exception.*—At the trial, the plaintiffs offered three prayers, the first and second of which the Court, (DOBBIN, J.,) rejected, the third was granted.

The second prayer was as follows:

2. If the jury shall find from the evidence, that at the time of effecting the policy of insurance offered in evidence in this cause, the plaintiffs applied for the said insurance through an insurance broker, to the defendant, and that the plaintiffs made no written application to the said defendant through the said broker, and that the plaintiffs were not required to make such application, but that the broker procured the policy on the presentation by him to the defendant's agent, of the written form of policy adopted by him, (the said broker,) and the statement that he had examined and approved the risk, and had issued other insurances in his own companies thereon, then the defendant is estopped from saying that an encumbrance existed on the property which should have been, and was not disclosed when the policy was issued.

The defendant offered eight prayers; the first, fourth and fifth were granted, the others were rejected. The first and fifth prayers were as follows:

1. If the jury shall find from the evidence in this cause, that the plaintiffs, Beck & Bolte, did on or about the 8th day of November, 1873, apply to the Hibernia Insurance Company of the State of Ohio, through its agent in the City of Baltimore, for the insurance upon the property referred to in the policy in this cause, and that in pursuance of said application, the said Hibernia Insurance Company did execute and deliver to the plaintiffs, the policy offered in evidence in this cause ; and if they shall further find that on or about the 9th of May, 1874, the property described in said policy was destroyed or injured by fire, to the extent of the insurance set out in said policy ; and if the jury shall further find, that previous to and at the time of the execution and delivery of said policy of insurance, the buildings therein described, belonged to George Beck alone, and there existed upon said buildings described in said policy, the two mortgages for $2500 each, dated respectively on the 10th of April, and

the 19th of July, 1872, and offered in evidence in this cause, and the existence of said mortgage encumbrances were not disclosed to the defendant, then the said policies of insurance were void from their inception, and the plaintiffs are not entitled to recover.

5. If the jury find the two mortgages offered in evidence, then the plaintiffs are not entitled to recover, unless the jury find that they were disclosed to the company at the time of the effecting of said policy of insurance, and that there is no evidence in the cause of such disclosure.

To the refusal of the Court to grant the plaintiffs' first and second prayers, and to its granting the defendant's first, fourth and fifth prayers, the plaintiffs excepted; and the verdict and judgment being for the defendant, they appealed.

The cause was argued before BARTOL, C. J., STEWART, MILLER, ALVEY and ROBINSON, J.

*Frank P. Clark* and *Fred. W. Brune,* for the appellants.

In rejecting the appellants' first and second, and in granting the appellee's first and fifth prayers, the Court decided, that the failure on the part of the appellants at the time of effecting the insurance, to disclose the mortgages existing on the property, worked a forfeiture of the policy; in so ruling, the Court erred :

1st. Because there is no requirement in any condition of the policy making it void in case encumbrances are not disclosed at the time of effecting the insurance. The fifteenth condition is not a condition precedent to the attaching of every policy, but simply *directory*, and applicable only to "cases of an application," the non-compliance with which does not involve a forfeiture of the policy. To strengthen this view, read the ninth condition

in connection with the fifteenth.    In the former it is required that the *preliminary proofs* of loss shall disclose whether the property is "encumbered or not," thus recognizing the possibility of an insurance existing upon encumbered property, when the encumbrance is not revealed—it not being in the language of the fifteenth condition, "a case of application."

2nd.  If it be held that the fifteenth condition is a condition precedent, affecting every insurance, whether based upon a technical application or not, then it could be waived, and there was evidence in this case to establish the waiver, and the Court below erred in taking the case away from the jury.   For had the jury found the facts set forth in the appellants' second prayer to be true, they were sufficient to constitute a waiver, whereby the appellee was estopped from relying upon the non-disclosure of the mortgages.    This term *application* is a technical term, and must be in writing.   It is something more than a mere verbal request and tendering of the written form of policy. It will be observed that the same clause that requires the disclosure of encumbrances, require that "the true value of the property " shall be stated, and this also, only "in all cases of application."    *The defence taken by the appellee is, therefore, a purely technical one.*    If the appellee issued the policy without requiring a written application, in the form prescribed by the policy, is it not in the highest degree unjust to permit the appellee to deal with the appellants, *as if a written application* had been made ?

It is admitted that it is competent for the parties to stipulate that certain statements shall be required as warranties, or conditions precedent, without reference to the materiality of those statements to the risk.    And in such a case, the failure to make those statements, or the failure to make them truly, will avoid the policy.    But if the company do not require the assured to make those statements in the form required by the policy, but insures his

property without demanding compliance with the written technical application, and the insured in such a case omits to state some of the things required to be stated in a technical application, it would be manifestly unjust to permit the company to defend as if a technical application had been required.

That the term application was used in this technical sense in the policy in this case, will moreover fully appear by resorting to the first condition of the policy for the definition of the term "application." The application called for in the first condition was not required in this case, and the policy can no more be avoided for the non-disclosure of the mortgages, than for omission of the survey and description; and the non-disclosure of the construction, materials and, situation of the buildings, and other matters and things specified under the first condition. *Fred. Co. Mu. Fire Ins. Co. vs. Deford, et al.*, 38 *Md.*, 413; *Planters' Mu. Ins. Co. vs. Deford, et al.*, 38 *Md.*, 402; *Liberty Hall Ass'n vs. Housatonic Ins. Co.*, 7 *Gray*, 261; *Blake vs. Exchange Mu. Ins. Co.*, 12 *Gray*, 265; *Nichols vs. Fayette Mu. Fire Ins. Co.* 1 *Allen*, 63; *Cumberland Valley Ins. Co. vs. Schell*, 29 *Penn. St.*, 31; *Satterthwaite vs. Mu. Ben. Ins. Asso.*, 14 *Penn. St.*, 393; *Plumb vs. Cattaraugus County Ins. Co.*, 18 *N. Y.*, 392; *Clinton vs. Hope Ins. Co.*, 45 *N. Y.*, 463; *Geib vs Enterprise Ins. Co.*, 1 *Dillon C. C.*, 449, (*note;*) *Peoria M. Ins. Co. vs. Perkins*, 16 *Mich.*, 380; *Lorillard Fire Ins. Co. vs. McCullough*, 21 *Ohio St.*, 176; *Newman vs. Springfield F. & M. Ins. Co.*, 17 *Minn.*, 173; *Dohn vs. Farmers' Joint Stock Ins. Co.*, 5 *Lansing*, 275; *May on Ins.*, 173; *Flanders on Ins.*, 224, 244; *McCulloch vs. Norwood*, 58 *N. Y.*, 563; *Bowman vs. Franklin Fire Ins. Co.*, 40 *Md.*, 630; *Washington Fire Ins. Co. vs. Kelly*, 32 *Md.*, 441.

Should the foregoing be held not conclusive of the question at issue, then it is insisted that the insurance can be, and must be, construed to be on the interest of Beck and

Bolte, which interest is in no wise affected by the encumbrances on the estate of Beck.

1. The insurance *can* be construed to be on the interest of Beck and Bolte, for that interest is clearly insurable, and the policy is in their name. *Phillips on Ins., sec.* 174 ; *Angell on Ins.,* 56, 57 *and* 58 ; *Flanders on Ins.,* 342, 379, 380 *and* 391 ; *Franklin Fire Ins. Co. vs. Coates & Glenn,* 14 *Md.,* 285 ; *Lee vs. Barreda,* 16 *Md.,* 190 ; *Laurent vs. Chatham F. Ins. Co.,* 1 *Hall, N. Y.,* 41 ; *Eichelberger vs. Miller,* 20 *Md.,* 332.

2. The language of the policy may be construed to cover the interest of Beck and Bolte, or the individual interest of Beck, as the phraseology is sufficient for either purpose ; and therefore on the general principles of construction applied to such contracts, that construction *must* be adopted · most favorable to securing full indemnity for the loss. *Maryland Fire Ins. Co vs. Whiteford,* 31 *Md.,* 219 ; *Edwards vs. Baltimore F. Ins. Co.,* 3 *Gill,* 176 ; *Citizens' Fire Ins. Co. vs. Doll,* 35 *Md.,* 104 ; *Carroll's Lessee vs. Granite Mfg. Co.,* 11 *Md.,* 411 ; *Stockham vs. Stockham,* 32 *Md.,* 209 ; *Allegre's Admr's vs. Md. Ins. Co.,* 2 *G. & J.,* 136 ; *Newson's Adm'r vs. Douglass,* 7 *H. & J.,* 417 ; *Patapsco Ins. Co. vs Biscoe,* 7 *G. & J.,* 293 ; *Md. Ins. Co. vs. Bossiere,* 9 *G. & J.,* 121 ; *Broom's Leg. Max.,* 459 ; *Augusta Ins. & Banking Co. vs. Abbott,* 12 *Md.,* 348 ; *National Fire Ins. Co. vs. Crane,* 16 *Md.,* 261 ; *Balto. Fire Ins. Co. vs. Loney,* 20 *Md.,* 20 ; *Charleston Ins. Co. vs. Corner,* 2 *Gill,* 410 ; *Heath vs Franklin Ins. Co.,* 1 *Cush.,* 457 ; *Peck vs. New London Mut. Ins. Co ,* 22 *Conn.,* 575 ; *May on Insurance,* 182–183 ; *Hoffman vs. Ætna Ins. Co.,* 32 *N. Y.,* 431.

*John Carson,* for the appellee.

Under the fifteenth condition and the last clause of the first condition, the policy is clearly void.

But if the case stood on the fifteenth condition alone, the policy would be equally void. · Specific enquiry is made of

the insured, as to encumbrances, showing that the company regarded this as material to the risk, and that materiality is *a matter of law,* and the insured could not be permitted to say it was immaterial, and the policy becomes void, as a matter of law.  *May on Insurance, secs.* 156, 185 ; *Bowman vs. Franklin Fire Ins. Co.,* 40 *Md.,* 620 ; *Hutchins vs. Cleveland Mut. Ins. Co.,* 11 *Ohio State,* 477 ; *Gahagan vs. Union Mut. Ins. Co.,* 43 *N. Hamp.,* 176 ; *Patten vs. Mer. & Far. Mut. F. Ins. Co.,* 38 *N. H.,* 338 ; *Bowditch Mut. F. Ins. Co. vs. Winslow,* 3 *Gray,* 415 ; *Same vs. Same,* 8 *Gray,* 38 ; *Penn. Ins. Co. vs. Gottsman,* 48 *Penna.,* 151; *Mut. F. Ins. Co. vs. Deale,* 18 *Md.,* 26 ; *Draper vs. Charter Oak Fire Ins. Co.,* 2 *Allen,* 573 ; *Campbell vs. New England Mut. Life Ins. Co.,* 98 *Mass.* 403, 405 ; 55 *N. Y.,* 244.

The encumbrances were proved by the production of the mortgages, and it was the duty of the Court to construe and pass on *these written instruments ;* the utmost the jury could pass on, was the fact of the mortgages and their non-disclosure, and both of these points are put to the jury by the defendant's first and fifth prayers.  *May on Insurance, sec.* 195.

The policy declares the conditions to be a part of the policy, and therefore a warranty, and under the fifteenth condition, Beck and Bolte were bound and warranted to disclose encumbrances, and failing to do so, the policy is void under said condition alone.  *May on Insurance, sec.* 183.

It is said that the word application in the fifteenth condition, is the same application as that called for in the first condition, as preceding the policy, and there being no such written precedent application in this case, we have waived the right for a disclosure of encumbrances under the fifteenth condition, and are estopped from setting up such non-disclosure, and this is the theory of the plaintiffs' second prayer.  Is this a correct interpretation of this

clause?   The  contract  of  insurance  is  one *uberrimæ fidei*,
and  the  stipulation  for  a  disclosure  of  encumbrances,  is  a
substantial element in the contract, existing in every case of
iunsurance,  as  well  where  there  is  a  written  application,  as
where  there  is  none.    *Bowman vs. Franklin Fire Ins. Co.*,
40 *Md.*, 631.

The  reason  of  the  rule  applies  to  all  cases,  and  the  lan-
guage is : " *In all cases of application for insurance in this
company* "—most  comprehensive  words—it  does  not  read
in  all  applications,  and  the  popular  common  sense  mean-
ing  of  the  words  " *all cases*,"  is  that  which  Judge  DOBBIN
gave  them,  viz.,  whenever  insurance  is  sought.    Why  then
the  restricted  construction  now  sought  for,  against  both  the
reason  of  the  rule,  and  the  plain  force  and  meaning  of  the
words  themselves?

Is  not  the  construction  of  the  fifteenth  condition,  con-
tended  for  by  the  appellee,  sustained  by  the  construction
of  the  last  clause  of  the  first  condition?    Can  any  narrow
restricted  construction  be  given  to  this  clause?    Does  it
not  embrace  " every  person,"  and  cover  the  whole  act  of
insurance,  from  its  inception  to  its  close,  forbidding
throughout,  any  misrepresentation  or  concealment?

MILLER,  J.,  delivered  the  opinion  of  the  Court.

By  the  policy  sued  on  in  this  case,  dated  November  8th,
1872,  and  continued  by  renewal  until  Nov.  8th,  1874,  the
appellee  insured  the  appellants,  Beck  and  Bolte,  to  the
amount  of  $2500,  say  " $2000  *on their* five  story  brick
building,"  the  structure  and  situation  of  which  is  stated,
" and  occupied  as  a  steam  furniture  factory,"  and  $500 on
the  adjoining  two  and  a  half  story  brick  building,  which
is  also  particularly  described.    In  August,  1873,  this
endorsement  was  made  on  the  instrument:  " It  is  under-
stood  that  the  buildings  above  described  *belong to* George
Beck,  but  loss,  if  any,  payable  to  Beck  and  Bolte,  to  be
used  in  re-erecting  said  property—buildings  stand  upon

leased ground." The policy also provides that it "is made and accepted in reference to the application of the insured, and to the conditions hereunto annexed, as forming part of this policy, and which are to be used and resorted to for a more particular description of the property insured, and in order to explain the rights and obligations of the parties hereto." Among the conditions to be particularly noticed are the first and fifteenth, as follows:

"1st. All policies must be made and issued upon a survey and description of the property insured, which survey and description shall constitute the application of the assured. Such application must specify the construction and materials of the buildings to be insured, or containing the property to be insured, by whom occupied, whether as a private dwelling or how otherwise; its situation with respect to contiguous buildings and their construction, use and materials; whether any manufactory is carried on within or about it, and shall also contain a just, true and full exposition of all the facts and circumstances in regard to the condition and value of the property insured, so far as the same are known to the assured, and are material to the risk. And such application shall be taken and deemed to be a part of the policy issued in pursuance thereof, and shall be deemed a warranty on the part of the assured that the facts therein stated constitute the true condition in all respects of the subject-matter of such insurance. *And if any person insuring any building or goods in this office shall make any misrepresentation or concealment, such insurance shall be void.*"

"15th. In *all cases* of applications for insurance in this company the applicant shall state the true value of the property, *and also the amount of encumbrance, if any exist thereon.*"

At the time of the insurance and of the loss the insured buildings belonged to Beck, but were in possession of the

firm of Beck & Bolte under articles of co-partnership appearing in the record, and which they had entered into for the purpose of carrying on the furniture manufacturing business. The insurance was effected through one Selby, an insurance agent and broker, who testified in reference thereto, that he made a personal examination of the premises with a view of issuing policies thereon, by the companies for whom he was agent, that he approved the risk and issued policies in all the companies of which he was agent, and then *as broker* effected additional insurances outside of his own agency, and among them procured this insurance from the defendant; that he made no written application therefor at all, and was not required by the defendant's agent to make any written application; that he merely presented the written form of the policies which he had adopted for his own companies, and stated to the defendant's agent that he approved the risk and had issued policies in his own companies, and thereupon, the defendant's agent issued this policy adopting the written form above referred to.

The company rests its defence upon the conceded facts that prior to and at the time this policy was issued, there were two mortgages on the insured buildings, executed by Beck to one May, amounting to $5000, and that the existence of these mortgages was never communicated to the company or its agent. The question therefore is, does the non-disclosure of these encumbrances avoid the policy and defeat the action? That it does we have no doubt.

There was much of ingenious reasoning by the able counsel for the appellants as to the construction and legal effect of the several provisions and conditions of this policy Their main argument was that compliance with the fifteenth condition was not a condition precedent to the attaching of every policy issued by the company, but was simply *directory,* and applied only to cases where there was a formal application in accordance with the first condition,

and inasmuch as no such application had been made in this case, non-compliance with the provision in the former condition requiring a statement of encumbrances does not necessarily involve a forfeiture of the policy. But according to our construction of this instrument it matters not whether there was here an application in strict and technical conformity with the first condition or not. There certainly was a presentation by the broker, who acted in this behalf as the agent of the assured, of a written statement embodied in other policies, which sufficiently specified the construction and materials of the insured buildings, their location and for what purpose they were used. This, though not containing all that the first condition required to be embodied in a formal application under it, was nevertheless *an application by the insured for the insurance,* and the fifteenth condition which seems to have been framed and put in for that special purpose, provides that in *all cases* of applications the amount of encumbrance on the property to be insured *shall be stated.* Looking to the whole instrument and reading, as we must, all its provisions to ascertain the intention of the parties, we cannot escape the conclusion that disclosure of encumbrances was made a material element of the contract, without which it was to be inoperative and void in its inception. It provides that the annexed conditions shall form part of the instrument, and are to be resorted to in order to explain the rights and obligations of the parties to it. Then by one condition, it requires *every applicant* to state any encumbrances that may exist on the property to be insured, and in another declares that if *any person* insuring *any buildings* or goods, shall make any misrepresentation or *concealment,* such insurance *shall be void.* This seems to us to make the validity of the contract to depend upon the disclosure of encumbrances, as effectually as if so stated connectedly in terms in a separate clause, as was done in *Bowman's Case,* 40 *Md.,* 620. Where encumbrances are

thus in express terms required to be disclosed, where such disclosure is thus made a substantial element of the contract, no good reason exists why the Courts should seek to place upon the instrument any rigid or restricted construction of its terms, in order to enable the assured to escape the consequences of the neglect of a plain obligation thus imposed on him by the contract, which he accepted, and knowledge of which on his part is presumed from such acceptance. *Balt. Fire Ins. Co. vs. Loney,* 20 *Md.,* 20. Applying the rule adopted by repeated decisions of this Court, that in construing a contract of insurance, as in all other cases, the intention of the contracting parties is to be regarded, and when ascertained, must govern and control their rights under it; we are satisfied it was the intention here, that this policy should be void, if, at the time it was issued, there were encumbrances on the buildings sought to be insured, which the assured did not disclose to the insurer. In this view of the case, it is wholly immaterial, whether the existence of the encumbrances was material to the risk or not, or whether the fact that none were disclosed, induced the insurer to issue the policy or not. The parties themselves by their contract, have made it material, and have stipulated that if encumbrances were not disclosed the policy should be void.

This construction of the policy answers also the argument, that the company is *estopped* from setting up this defence. We have had occasion very recently in the case of *Maryland Fire Ins. Co. vs. Gusdorf,* 43 *Md.,* 506, to examine this question of equitable estoppel, and have adopted it as a just and sound doctrine, to be applied in all cases to which it is properly applicable, as well at law as in equity. But if we are right in the construction of the policy now before us, there is in this case no room for the application of this doctrine. If the assured had in fact disclosed these encumbrances, and the policy had been issued with knowledge thus communicated, the case would

have been entirely different. So also had the policy required the endorsement of the company's assent to the encumbrances, and with knowledge of their existence, they had issued the policy without making the endorsement, the estoppel would apply. In either case, the fact of disclosure could be established by parol testimony. But there is here no proof whatever of any such disclosure ; on the contrary, it is conceded that none was made. The case is then simply this : The assured applies for insurance on certain buildings, which he represents as belonging to himself; he fails to state they were encumbered by mortgages, and accepts a policy which requires him to make such statement if the facts were so, and that the insurance should be void if he did not. The obligation rested on him, and no omission of duty is imputable to the insurer. If in such case the insurer cannot avail himself of the express stipulations of the contract, there is no conceivable case in which such conditions can be availed of, and it might as well be said at once that parties have no power to make such contracts.

That the insurance was *on the buildings* belonging to Beck, and not on any interest which Beck and Bolte might have had in them under their co-partnership contract, (even supposing that would make any difference in the case,) we consider too clear on the face of the policy and the endorsement thereon to admit of question.

For these reasons, we are of opinion the defence of the company which was sustained by the rulings of the Superior Court, is valid and effectual against any suit on this policy, and the judgment must therefore be affirmed.

*Judgment affirmed.*

(Decided 2nd March, 1876.)