(18 App. Div. 609.)

## SKINNER v. NORMAN.

(Supreme Court, Appellate Division, Fourth Department. June 12, 1897.)

INSURANCE—CONDITIONS AGAINST INCUMBRANCE.

An insurance company to which application is made to insure property is not bound to make inquiries, and ascertain whether the property is incumbered, nor chargeable with such knowledge as to incumbrances as investigation would disclose; but it is the duty of the owner of the property to disclose the existence of any incumbrance, and, if he fails to do so, and accepts a policy containing a proviso that it shall be void if the property is or becomes incumbered, he cannot recover upon it, though he did not in fact know of the proviso.

Appeal from trial term, Oswego county.

Action by Nelson E. Skinner against F. H. Norman, treasurer of the Sun Fire Office. From a judgment in favor of plaintiff, and from an order denying a motion for new trial on the minutes, defendant appeals. Reversed.

On and prior to August 3, 1891, the plaintiff was the owner of the steamer Geneva, of which Frank Andrews was then the master or captain, and which was engaged in the business of carrying passengers between Oswego and Beach Oswego, about three miles westerly from the port of Oswego, on the shore of Lake Ontario. On or about the last-named date, the plaintiff instructed the master or captain of the steamer to effect an insurance on the same. In pursuance of such instruction, Andrews went to Fred D. Wheeler, the agent of the defendant, at Oswego, and this is Andrews' version of what took place at such interview: "I went to his office, and I told him I would like to get some insurance on the Geneva. He asked me, 'How much?' I told him I thought I would like two thousand in marine and two thousand in fire, and he said he had no marine, or something of that kind, I guess it was; so I told him I would take four thousand in fire. He asked me some questions about her; asked me if there were any claims against her. I told him not that I knew of. If there were any, he could find out at the custom house, or of Mr. Skinner. I said to him: 'You pass his house two or three times a day. You can stop in and see him, if you don't happen to see him on the street;' and he said, 'All right;' and we had a general conversation, and talked perhaps fifteen or twenty minutes, and I got ready to go. I noticed he had been taking notes of what I told him, and I asked him if everything was all right, and he said, 'Yes;' he would attend to it; so I went back. Mr. Skinner authorized me to effect the insurance, and a day or two after that I told him I had done so. The policy was not delivered to me. It was sent to Mr. Skinner's house within two or three days after." Fred D. Wheeler, the agent of the defendant, testified, concerning the interview, as follows: "The application that was made to me to insure this steamboat Geneva was made by Captain Andrews. * * * He said that Skinner wanted some insurance on the boat. I asked him, 'How much?' He said, 'About four thousand dollars.' I asked him if there were any claims on the boat, and he said that he didn't know of any, but that I could go to Mr. Skinner, and find out; or I had better see Mr. Skinner and find out. I saw Mr. Skinner, perhaps the next day to this, in the afternoon, down on Mill dock, and I asked him if he wanted some insurance. He said he did. I asked him what condition the property was in as to claims, and he said, 'The boat is mine, belongs to me, and the loss is payable to me.' That was all that he said on the subject. I afterwards issued the policy." The plaintiff denied that he ever had any such conversation with Mr. Wheeler, as testified to by the latter. The policy was dated August 3, 1891, and by it the steamer was insured for one year from its date. It was delivered to the plaintiff three or four days after its date. September 23, 1891, the steamer was totally destroyed by fire. Notice thereof, and proofs of loss, were duly served upon the Sun Fire Office. The company refused to pay the loss, and this action was brought. The defense relied on is a breach of the terms of the contract, in that the policy in question contained a condition that the same, unless otherwise provided by agreement indorsed thereon, or added thereto, should be void if the subject of insurance was personal property, and was or should become incumbered by a chattel mortgage. It appears from the policy, which was read in evidence, that it did contain such a condition; and it further appears from the evidence that the steamer was incumbered by a chattel mortgage at the time of the issuing of the policy, and that it continued to be from that time on, and at the time of the loss, a subsisting lien against such property; that no agreement in relation to the chattel mortgage was indorsed upon or added to the policy. At the close of plaintiff's case, the defendant moved for a nonsuit, upon the ground of such breach of the conditions of the policy. That motion was denied, and the defendant excepted. At the close of the defendant's case, he renewed his motion for a nonsuit on the same grounds. That motion was also denied, and the case was submitted to the jury. The court, upon such submission, charged the jury that: "If the plaintiff in this case sent the captain to the office of the insurance agent to procure insurance for him, and the insurance agent asked Captain Andrews if there was any incumbrance on this vessel, and the captain told the insurance agent that he did not know, but that he could find out from Mr. Skinner, at the custom house, that he could there ascertain about the incumbrance, if the insurance agent went on and issued the policy without having made those inquiries, and without indorsing the fact upon the policy, I hold and charge you

that, if those are the facts, your verdict should be for the plaintiff." To this portion of the charge the defendant excepted. The jury found a verdict in favor of the plaintiff. A motion for a new trial upon the minutes was duly made by the defendant, and denied, and thereafter judgment was entered upon the verdict. This appeal is from that judgment, and from the order denying the motion for a new trial.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

A. H. Sawyer, for appellant.
P. W. Cullinan, for respondent.

GREEN, J. There is practically no dispute upon the facts. The plaintiff's claim is that, although the policy contains a clause providing that the same, unless otherwise provided by agreement indorsed thereon or added thereto, should be void if the subject of insurance be personal property, and be or become incumbered by a chattel mortgage; and notwithstanding the fact that the property so insured was personal property, and was incumbered by a chattel mortgage at the time the same was insured, and that that fact was not indorsed upon or added to the policy,—the defendant is estopped from setting up a breach of that condition, for the reason that it was incumbent upon the defendant to make inquiries, and to ascertain whether or not the property to be insured was incumbered; and that, not having made those inquiries, it is chargeable with such knowledge as investigation respecting the condition of the property would have disclosed, and that, therefore, the defendant assumed the risk as it actually existed when the policy was issued, subject to the incumbrance upon the property insured. In other words, that under the circumstances under which this policy was issued the insurance company, having neglected to make such inquiry, consented to any existing incumbrance on the property which it could have ascertained by reasonable investigation, notwithstanding the provision in the policy rendering it void if there were then such incumbrance thereon, unless the fact of the existence of the same was noted upon the policy; and that, therefore, the defendant is estopped from setting up as a defense the breach of this condition in the policy.

To support the contention of the plaintiff that defendant is estopped from setting up a breach of the condition of the policy in question, he relies upon Robbins v. Insurance Co., 149 N. Y. 477, 44 N. E. 159; Wood v. Insurance Co., 149 N. Y. 382, 44 N. E. 80; and McGuire v. Insurance Co., 7 App. Div. 575, 40 N. Y. Supp. 300. It appears from an examination of those cases that they were decided upon a state of facts widely differing from the facts in this case. In the cases cited it appears that the insurance company in each case issued the policy with full knowledge by its agents, at the time it was issued, of the existence of facts contrary to the conditions of the policy. In such a case it is presumed that the consent of the company to the existence of such a state of facts was omitted, by mistake, to be stated in the policy, and that the company is estopped from setting up as a defense the breach of such conditions. But such is not the case here. There is nothing to show that the defendant, or its agent, was informed of the

existence of this incumbrance upon the property, or that either had information that such was the fact until after the loss occurred. So that the material element of knowledge of all the facts and circumstances of the condition of this property at the time the policy was issued, which was present in the cases cited, is wholly wanting in the case at bar; and therefore the decisions relied upon by plaintiff are inapplicable to this case. The premise upon which the argument of plaintiff is based is an erroneous one. The statement of the plaintiff, by his duly-authorized agent, to the agent of defendant, at the time of making the application for insurance, was that there was no incumbrance on the property that he knew of. It is true that he told defendant's agent that if there was any incumbrance, he could find out at the custom house, or of Mr. Skinner. Upon this latter statement plaintiff relies as a notification to defendant that there was an incumbrance on the property, or that it was sufficient to put defendant on inquiry, and that, if it neglected to make such inquiry, or to make a search against the property, then it was estopped from setting up as a defense the breach relied upon by defendant. And this was the view taken by the learned trial justice. No authority for such a rule has been called to the attention of the court, and diligent research fails to disclose any. The statement by plaintiff, through his agent, to the effect that the defendant's agent might make inquiry, or search the records of the custom house, conferred no greater rights or privileges than the latter possessed before such statement; nor did it absolve plaintiff from the obligation which rested upon him of disclosing all the material facts and circumstances relating to the condition of this property. Neither did it cast upon defendant the burden of making inquiry, or searching to discover such condition. A day or two after this interview, plaintiff was informed by his agent that he had effected the insurance, and at about the same time the policy was delivered to plaintiff. It was received and retained by plaintiff without objection. At the time plaintiff constituted Mr. Andrews his agent to effect this insurance, it was incumbent upon plaintiff to instruct him in his duties as such agent. If he did not so instruct him, or if the agent neglected to follow those instructions, the plaintiff, and not the defendant, must suffer the consequences. An examination of his contract, the contents of which he is presumed to have known, would have disclosed to plaintiff that it was not binding upon the company; that in case of loss by fire he would have no redress against the company; for he does not claim that he knew that the company's agent, or his own agent, knew anything about the incumbrance on the vessel, or that that had been mentioned by either of them at the time of making the application. So far as appears, therefore, he then relied upon the terms of the policy, and not upon any oral agreement or waiver on the part of the company's agent. He knew of the incumbrance; the insurance-company did not. It was not obligatory upon the insurer to ascertain the condition of the property.

In Ellis v. Insurance Co., 68 Iowa, 578, 27 N. W. 762, there was incumbrance upon the property of which the insurer had no knowledge. The policy was assigned with the consent of the company. It was claimed that before consenting to such assignment the company should

have ascertained whether there was an incumbrance upon the property, but it was held that there was no warrant for any such rule, and that it would work great mischief to so hold; that there was no duty upon the insurer to ascertain incumbrances upon property insured. It was the duty of the plaintiff to disclose to the company the existence of the incumbrance. "The case is, then, simply this: The assured applies for insurance on certain buildings, which he represents as belonging to himself. He fails to state that they were incumbered by mortgages, and accepts a policy which requires him to make such statement, if the facts were so, and that the insurance should be void if he did not. The obligation rested on him, and no omission of duty is imputable to the insurer." Beck v. Insurance Co., 44 Md. 107. This rule is a beneficent one, founded in reason, and highly commendable, as necessitating a fair and full disclosure of the condition of property concerning which the parties purpose contracting. That rule must be applied to this case. All the special facts upon which the risk was to be computed, and the condition of the property, were known to plaintiff when the application for insurance was made. It was obligatory upon him to make known to the company all facts and circumstances material to the risk. The company had a right to rely upon this obligation resting upon the applicant, and that he would not suppress any facts and circumstances which would mislead the company, and induce it to execute a risk which it would not assume if any existing material facts and circumstances were not so suppressed. The insurer was presumed to undertake only the risks communicated to it, and understood and intended to be taken at the time of making the agreement. It should have had full opportunity to judge of the condition of the property before executing the contract, so that it may have rejected or accepted with full knowledge of its true condition. If the applicant suppresses that which, by the very terms of the policy, voids the instrument, it was a deception upon the company sufficient to avoid its contract. The plaintiff knew of this incumbrance when his duly-authorized agent made the application. He is presumed to know the law, and that the terms and conditions of the policy to be issued are fixed and determined by statute. The policy which was issued and delivered to him contained the terms and conditions so fixed and determined. He received the policy more than six weeks before the fire, and retained the same without objection. He is presumed to have contracted with reference to the terms of that contract, and subject to its conditions and requirements. Upon its receipt by him, the contract of insurance was complete in all its terms, and binding upon both parties. He accepted it with all its terms and limitations. In the absence of fraud or mistake, he was, on general principles and authority, presumed to know its contents. Wilcox v. Insurance Co. (Wis.; 1893) 55 N. W. 188. The policy itself was notice to him that the company would not be bound to pay any loss if this property was incumbered, unless an agreement to that effect was indorsed upon or added to the contract; and it expressly provided in its contract that the same should be void if the property therein described was, at the time of the execution of the policy, or should thereafter be, incumbered, unless the insured notified it that such was the fact, and caused

the same to be indorsed on or added to the policy. "The use of the standard policy was compelled by legislative enactment to remedy existing evils, and, among others, to protect insurance companies from the perils of alleged parol waivers by their local agents. Every person who now enters into a contract of insurance is required to agree that no officer or agent or other representative of the company shall have power to waive any provision or condition of the policy, except such as by the terms thereof may be the subject of agreement indorsed thereon, and as to such provisions and conditions the waiver must be written upon or attached to the policy; and he specially covenants that he will not claim any privilege or permission unless it be in writing." Moore v. Insurance Co., 141 N. Y. 223, 36 N. E. 192. The silent acceptance of the policy by plaintiff closed the contract, and bound him to the agreement tendered by its policy, that it would be void if the property was then, or should thereafter become, incumbered, unless an agreement thereto was indorsed on or added to the policy. Lasher v. Insurance Co., 86 N. Y. 423. The plaintiff, however, seeks to avoid the force and effect of the limitations and conditions of the contract, on the plea that he never read the policy, and did not know of the condition in question. He had the policy in his possession more than six weeks before the fire; and, if he did not read it, it was his own fault, and he must bear the consequences of his negligence. He was a man of affairs, actually engaged in business, and, so far as appears, fully able to comprehend and protect his own interests. There was nothing to preclude his reading it, there is no fact alleged or shown, and no act on the part of the company, which could tend to mislead or induce him to neglect to inform himself of its contents, or prevent him from reading the policy as soon as he obtained it. He is presumed to know its contents. Insurance Co. v. Fletcher, 117 U. S. 519, 6 Sup. Ct. 837; Ryan v. Insurance Co., 41 Conn. 172. "In determining the liability in this case, it is immaterial whether the plaintiff read the policy or not, or that he had no actual knowledge of the conditions. * * * The conditions and limitations were a part of the contract, and he was bound to take notice of them, and is not excused upon the plea that he omitted to acquaint himself with the provisions of the policy." Quinlan v. Insurance Co., 133 N. Y. 364, 365, 31 N. E. 31, 33. "When there is no application, the insured is bound by the conditions of the policy which he accepts and holds without objection. That he never read it is not the fault of the insurer." 1 May, Ins. § 10. The judgment and order should be reversed, and a new trial ordered, with costs to abide the event.

Judgment and order reversed, and new trial ordered, with costs to abide the event. All concur.