(82 Misc. Rep. 79.)

TILTON v. FARMERS' INS. CO. OF TOWN OF PALATINE.

(Supreme Court, Trial Term, Montgomery County. February, 1913.)

1. INSURANCE (§ 336*)—FORFEITURE—ADDITIONAL INSURANCE.
    Where at the time a policy of insurance, which provided that it should be void if the assured already had other insurance on the property of which the company was not notified, or should thereafter obtain other insurance and should not with all reasonable diligence give notice thereof to the insurer and have it indorsed on the policy or otherwise acknowledged·in writing, was issued, there was no other insurance on the property, but other insurance was subsequently obtained without notice to the insurer and without indorsement or other acknowledgment in writing, the policy, although valid in its inception, became invalid unless the provision as to additional insurance was waived by the insurer or unless the insurer was estopped from insisting thereon.
    [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 856–873; Dec. Dig. § 336.*]

2. INSURANCE (§ 389*)—WAIVER OF FORFEITURE—ISSUANCE OF POLICY WITHOUT OBJECTION.
    Where an insurance company issues a policy with full knowledge of facts which would render it void in its inception, if its provisions were insisted upon, it will be presumed that, though it by mistake omitted to express the fact in the policy, it waived such provisions and estopped itself from setting them up, as a contrary inference would impute to it the fraudulent intent to deliver and receive pay for an invalid instrument.
    [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1028–1031; Dec. Dig. § 389.*]

3. INSURANCE (§ 385*)—FORFEITURE—ADDITIONAL INSURANCE—CONSENT.
    Where an insurance policy, which provided that it should be void if assured obtained other insurance without giving notice to the company and having it indorsed on the policy or otherwise acknowledged in writing, was issued without an indorsement or acknowledgment permitting other insurance, and the policy was in assured's possession for 17 months before additional insurance was obtained and 22 months before a fire, the company was not estopped to assert the invalidity of the policy, even assuming that assured in negotiating for the policy asked the company's secretary to send a permit for additional insurance with the policy, which he promised to do, and that, on being told a few days later of the intention to procure additional insurance, he said, "All right," since, while this showed notice to the company, indorsement on the policy or other acknowledgment in writing was necessary to make the secretary's consent to the additional insurance effective.
    [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1020–1023; Dec. Dig. § 385.*]

4. INSURANCE (§ 376*)—FORFEITURE—ADDITIONAL INSURANCE—CONSENT.
    A holder of a policy of insurance would be presumed to have contracted with reference to conditions of the policy, imposing limitations on the authority of the insurer's secretary to consent to additional insurance.
    [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 952–955; Dec. Dig. § 376.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**5. INSURANCE (§ 136\*)—CONTRACT—OPERATION AND EFFECT—FAILURE TO READ.**

Where an assured was a successful business woman fully able to comprehend and protect her interests, and there was nothing to prevent her from reading the policy, she was bound to take notice of, and was not excused because she omitted to acquaint herself with, its provisions, and it would be presumed that she was so acquainted.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 219–230; Dec. Dig. § 136.\*]

**6. INSURANCE (§ 336\*)—FORFEITURE—ADDITIONAL INSURANCE—CONSENT.**

Where in the negotiations for an insurance policy the insurer's secretary, on being told that assured wanted a permit for additional insurance, stated that it would be necessary to present the request to the board of directors, there was no agreement by him that the permit would be issued.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 856–873; Dec. Dig. § 336.\*]

**7. INSURANCE (§ 371\*)—FORFEITURE—WAIVER OR ESTOPPEL.**

To constitute a waiver or an estoppel as to a forfeiture of an insurance policy, the assured must have been misled by some act of the insurer, or the insurer must, after knowledge of the breach, have done something which could only be done by virtue of the policy or have required something of the assured, which he was bound to do only under a valid policy or have exercised a right which it had only by virtue of such a policy, and neither an estoppel nor a waiver can be inferred from mere silence or inaction.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 943–946; Dec. Dig. § 371.\*]

**8. INSURANCE (§ 396\*)—FORFEITURE—WAIVER OR ESTOPPEL.**

Where the secretary of an insurance company, who, under the articles of association made a part of a policy, had no power or authority to adjust losses, subsequent to a fire, refused to indorse on a policy a permit for additional insurance, and at the same time told assured that she had 20 days to get in the proofs of loss, that he did not think there would be any trouble, but that there might be, this was not a waiver of the forfeiture of the policy by obtaining additional insurance without the consent of the assured as required by the policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1071–1077; Dec. Dig. § 396.\*]

**9. INSURANCE (§ 396\*)—FORFEITURE—WAIVER—AUTHORITY.**

A member of a co-operative fire insurance company would be presumed to have knowledge of the limitations on the power or authority of the secretary relative to the adjustment of losses contained in the articles of association made a part of her policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1071–1077; Dec. Dig. § 396.\*]

**10. INSURANCE (§ 396\*)—WAIVER—FORFEITURE—AUTHORITY.**

Where a fire insurance policy had been forfeited by obtaining additional insurance without the consent of the insurer, the retention by the company of proofs of loss was not a waiver of the forfeiture, although it would probably have been a• waiver of any irregularity in the proofs.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1071–1077; Dec. Dig. § 396.\*]

Action on a fire insurance policy by Clara M. Tilton against the Farmers' Insurance Company of the Town of Palatine. Judgment dismissing the complaint.

Henry V. Borst, of Amsterdam, for plaintiff.

Sitterly & Burtch, of Fonda, and Charles S. Nisbet, of Amsterdam, for defendant.

WHITMYER, J.   Defendant, a town co-operative fire insurance company, engaged in business in the town of Palatine, Montgomery county, in this state, on or about January 21, 1909, delivered to plaintiff a fire insurance policy, dated October 15, 1908, insuring plaintiff's buildings in said town against loss by fire in the sum of $3,550, for the period of five years from its date.   It contained a provision that in case the assured should already have made any other insurance on the property, not notified to the company, or in case the assured, or the assigns of the assured, should thereafter make any other insurance on said property and should not with all reasonable diligence give notice thereof to the company and have the same indorsed on the policy or otherwise acknowledged in writing, the policy should cease and be of no effect.   The property was not otherwise insured at this time.   On May 31, 1910, plaintiff obtained $3,000 additional insurance thereon, without giving notice thereof and having the same indorsed on the policy or otherwise acknowledged in writing.   The property was totally destroyed by fire October 31, 1910, and such notice had not been given and such indorsement or acknowledgment had not been made at that time.

The policy contains a provision which requires a person, who has been insured and has sustained loss or damage by fire, to give notice thereof to the secretary forthwith and within 20 days after loss to deliver a particular account thereof, or of the damage, signed by his own hand and verified by his oath or affirmation, with other particulars therein specified.   Plaintiff's husband notified defendant's secretary of the fire two days thereafter and gave him a verified statement or inventory of the loss 19 days thereafter.   This did not comply with the policy, but was not returned.   On March 10, 1911, he gave him proof of loss, substantially in proper form, and this was not returned.

Section 10 of defendant's articles of association, written upon the face of the policy, provides that the directors shall, after receiving notice of any loss or damage sustained and after ascertaining the same or after the rendition of any judgment therefor, apportion the same among the members thereof as therein set forth.   Plaintiff was a member of the defendant company.   Insurance, based upon application in writing, a promissory note for the assessments, and subscribing the articles of association, were among the requirements for membership.   The policy was issued by defendant's secretary, John Saltsman, who was authorized to take applications, to issue policies, and to consent to additional insurance.   So far as appears, written application was not made for the policy in suit, and the note required was not given.   Saltsman had issued another policy upon the property, October 15, 1903, upon the same conditions for the same period, and in the same amount.   Application in writing was made and a note was given at this time, but it does not appear that the articles were actually subscribed.   Plaintiff and her husband claim that they asked for a permit for additional insurance when they made application for the first policy, but that Salts-

man stated that it would be necessary to present the request to defendant's board of directors, after which he would send the permit with the policy. Saltsman denies this. That policy did not contain a permit and plaintiff knew it. It expired October 15, 1908. Saltsman says that he was directed by plaintiff by telephone, just before this, to renew the policy upon the same terms and conditions, and that he then prepared the policy in question, procured the signature of the president, but did not send it until January 21, 1909. Plaintiff says that Saltsman came to her factory for candy December 22, 1908, and that her husband came in while he was there, but did not recognize him, so that she introduced him. Her testimony of the conversation at this time is as follows:

"He (her husband) says, 'You are Mr. Saltsman,' and shook hands and spoke about the permit we did not get. Mr. Saltsman says: 'Your insurance has expired. I better make out a new one and send it down, the new one.' I told Mr. Saltsman I did not want to let it run out and I would let him have the candy for $1.25, which would go for the application. I says, 'Send down the permit with the policy.' He said, 'All right,' and then he went out."

At the close of her cross-examination, however, she testifies that Saltsman said that he would have to present the request to the board. Her husband confirms her testimony as to the reference by himself at this time to the permit in connection with the other policy, and then testifies:

"I said to him, 'I want that permit.' He says: 'I cannot give it now. I will have to bring it before the board of directors.' I says, 'Do it.' Then he said he would send down the policy, he had renewed, he would send it down later."

He also claims that he told Saltsman about ten days later, as he was passing him at a corner, that he was going to take out other insurance, and thinks that Saltsman said, "All right." Saltsman denies all of this, except that he was at the factory. Plaintiff also testifies that she asked Saltsman for a vacancy permit about six days before the fire and that he told her it would be unnecessary. He says that she merely asked whether it would make any difference if the house was vacant while under repair, and that he answered that the company preferred to have it occupied, to which she replied that it would be for only a short time. That permit was not indorsed. She says that the policy was inclosed in an envelope and was lying on the seat of her wagon at the time. Saltsman says that he did not see it. She also says that the envelope was opened by her husband after the fire and that she did not see the policy until then. Her husband says that he saw the policy for the first time after the fire, that the envelope was open at the time, and that he did not open it. One or two assessments were collected early in 1909, but none after the additional insurance was effected.

Plaintiff's husband notified Saltsman of the loss two days after the fire and at the same time requested him to make the necessary indorsement for additional insurance, stating that he had overlooked the requirement as to other insurance, but Saltsman refused. He had the other policies with him and showed them to Saltsman, who did not

know about them or about the additional insurance before this and told him that he ought to have given notice of them, to which he replied that he thought it was unnecessary because no other company required it. He testifies that Saltsman then said to him: "You have got twenty days to get in the proof of loss. I do not think there will be any trouble. There may be." Then, that he did not recollect that he said anything about making up the proof, only that one man had not sent his in, and, finally, that "we should put in our proof of loss, he did not think there would be any trouble, but there might be." Saltsman testifies that the proofs were not talked about very much and that all he said was that "the rule was for 20 days after the fire." The verified statement or inventory, referred to above, was delivered by plaintiff's husband. He says that he asked Saltsman at that time to attend a meeting of the adjusters for the other companies, and that Saltsman promised, but that he did not attend, that he then asked him by telephone to attend an adjourned meeting, and that Saltsman said he would try, but that he did not come, whereupon he telephoned again, and Saltsman told him that the policy was void. Plaintiff then talked with Saltsman by telephone and he told her the same. She called upon him after this, in January, 1911, and asked him to call a special meeting of the board. He told her he could not and referred her to the president, A. V. Dockstader. She saw the president a little later and told him her mission. He replied that the policy had been considered void, whereupon plaintiff said that she thought he might, possibly, reconsider; that she had seen some of the directors; and that they seemed to favor his calling a special meeting and permitting her to be present to explain. His answer was that he could not, because two meetings had already been held and that the board had concluded not to pay. However, her request was complied with, the meeting was held January 21, 1911, and plaintiff and her husband were invited by telephone. The latter appeared and asked the board what they wanted. The president said that the board did not want anything, but desired to know what he wanted. He said that the claim ought to be allowed. The president told him that the policy was void, because of failure to obtain a permit, to which he replied that he had made two applications for one and that the secretary told him each time that it would be necessary to present the request to the board. At this time, failure to present proofs of loss, excessive insurance, and the claim, in effect, that the fire was of doubtful origin, were assigned as additional reasons for the refusal to pay. As to the proof of loss, plaintiff's husband says that the president told him at that time that it was not a proof and was not sworn to, and that he then offered to make any correction desired, stating that the affidavit to it had been prepared by Justice of the Peace Dockstader (not the president), who had said that it was all right. There is no evidence that defendant requested anything, and plaintiff's husband left the meeting threatening suit.

This review, in detail as it is, has been made necessary because of the contradictions in the testimony, and because, under the motions of plaintiff and defendant at the close of the case, all questions are here for determination.

[1] The additional insurance had not been procured when defendant's policy was delivered, but was subsequently obtained, so that the policy was valid in its inception and became invalid because of the subsequent additional insurance without notice thereof to defendant and without indorsement thereof on the policy or without other acknowledgment in writing as required by the policy (Gray v. Germania Fire Ins. Co., 155 N. Y. 184, 49 N. E. 675), unless the provision as to such insurance was waived by defendant or unless defendant is estopped from insisting upon it. Plaintiff claims that permission for additional insurance was a condition upon which it was agreed that the policy should be issued and that she had the right to rely upon the agreement, without examination of the policy, so that, having issued it, knowingly, without an indorsement, and having thereafter collected assessments thereon, defendant is now estopped from insisting upon that provision.

[2] It is well settled that where an insurance company issues a policy, with full knowledge of facts, which would render it void in its inception, if its provisions were insisted upon, it will be presumed that it by mistake omitted to express the fact in the policy, waived the provisions, or held itself estopped from setting them up, as a contrary inference would impute to it a fraudulent intent to deliver and receive pay for an invalid instrument. Gray v. Germania Ins. Co., 155 N. Y. 184, 49 N. E. 675; Wood v. American Fire Ins. Co., 149 N. Y. 382, 44 N. E. 80, 52 Am. St. Rep. 733; Robbins v. Springfield F. & M. Ins. Co., 149 N. Y. 477, 484, 44 N. E. 159.

[3] Plaintiff invokes this principle here. Of course, there would be no question about its applicability, if the additional insurance had been in force, to defendant's knowledge, at the time of the delivery by it of its policy. Defendant's secretary had authority to consent to additional insurance. It could only be effected, without affecting the validity of the policy, by notice thereof and by indorsement on the policy or other acknowledgment in writing. Notice to the secretary was notice to the company, but the policy also required indorsement thereon or other acknowledgment in writing to make his consent effective.

[4] The conditions of the policy and the limitations to the authority of the secretary appeared on the face of the policy. They were a part of the contract, and plaintiff is presumed to have contracted with reference to them. Quinlan v. P. W. Ins. Co., 133 N. Y. 356, 31 N. E. 31, 28 Am. St. Rep. 645; Baumgartel v. P. W. Ins. Co., 136 N. Y. 552, 32 N. E. 990; Skinner v. Norman, 18 App. Div. 616, 46 N. Y. Supp. 65. The policy was issued without a new application and without a permit for additional insurance. It was delivered to plaintiff and remained in her custody thereafter, without objection and without examination. Upon its delivery and acceptance, the contract of insurance was complete in all its terms and binding upon both parties.

[5] Plaintiff is a successful business woman, fully able to comprehend and protect her interests, and there was nothing to prevent her from reading the policy. She was bound to take notice of, and is not excused because she omitted to acquaint herself with, its pro-

visions, and it must be presumed that she was so acquainted. 1 May on Insurance, § 167; Quinlan v. P. W. Ins. Co., supra; Baumgartel v. P. W. Ins. Co., supra; Skinner v. Norman, supra. The policy, it is true, was in defendant's possession from October 15, 1908, to January 21, 1909; but nothing was said or done to mislead her about its provisions or to induce her not to read or to prevent her from reading it, after she obtained it. Seventeen months elapsed before the additional insurance was obtained and 22 months before the fire occurred, and the policy could have been read by her and produced for indorsement at any time. The case is therefore distinguishable from Manchester v. Guardian Assurance Co., 151 N. Y. 90, 45 N. E. 381, 56 Am. St. Rep. 600, upon which plaintiff relies.

[6] Under those circumstances, there is no estoppel, even if it be assumed that plaintiff asked Saltsman, at the time of the meeting in the factory, to send the permit down with the policy, and that he said, "All right," as plaintiff testified, or if it be assumed that plaintiff's husband told Saltsman ten days after that meeting, and before the delivery of the policy, of his intention to procure additional insurance and that Saltsman then also said, "All right." And, if Saltsman told plaintiff that it would be necessary to present the request to the board, as plaintiff stated at the close of her cross-examination, and as her husband stated in each instance, that was not an agreement to issue the permit. However, the application for the first policy did not refer to additional insurance in any way and there was no written application for the one in suit. Plaintiff and her husband say that permission for additional insurance was asked for on each occasion. Saltsman says not. Neither policy gave permission. Plaintiff admits that she knew that the first one did not and says that she did not read the one in suit, because she supposed that it had been properly indorsed. The life of the first policy was five years, and the one in suit had been in plaintiff's possession for about seventeen months, when the additional insurance was effected. The fire occurred about five months after this, and plaintiff's husband then said, in effect, that the requirements as to additional insurance had been overlooked. The evidence shows that such was the fact.

[7] There was a forfeiture, and it remains to be determined whether defendant has waived or is estopped from claiming it. The circumstances and acts required to constitute a waiver or an estoppel are well established. In the absence of express waiver, some of the elements of an estoppel must exist. The insured must have been misled by some act of the insurer, or it must, after knowledge of the breach, have done something which could only be done by virtue of the policy, or have required something of the assured, which he was bound to do only under a valid policy or have exercised a right which it had only by virtue of such a policy; but neither an estoppel nor a waiver can be inferred from mere silence or inaction. Gibson Electric Co. v. Liverpool, L. & G. Ins. Co., 159 N. Y. 426, 54 N. E. 23.

[8] There was no express waiver here, but it is claimed that defendant's secretary directed or requested plaintiff to present her proof of loss in time. This claim is based upon the testimony of plaintiff's

husband. He testified that Saltsman, when notified of the loss, said: "You have got twenty days to get in the proof of loss. I do not think there will be any trouble. There may be." He then testified that he did not recollect that Saltsman said anything about making up the proof, and, finally, in answer to a suggestive question, that he. said "we should put in our proof of loss, he did not think there would be any trouble, but there might be." His testimony is contradictory, but we will assume that Saltsman used the language last above set forth. The policy required that notice of loss be given forthwith to the secretary. It did not require service of proof of loss upon him and did not give him power or authority to adjust a loss.

[9] Under the articles of association, the power or authority to adjust was in the board of directors. These articles were written upon the face of the policy, and plaintiff was a member of the company, so that it must be presumed that she had knowledge of the limitations to the power or authority of the secretary. Moreover, there is no evidence that the board gave him the power or authority to adjust in this case. In any event, the direction or request to present proof of loss, if made, was, at the most, only a qualified one and shows on its face that Saltsman did not intend thereby to bind defendant, even if he had the power so to do. Plaintiff could not have been misled by it. Saltsman says that they did not talk about the proofs very much and that he said nothing more than that "the rule was for twenty days after the fire." That was simply a statement relating to a policy requirement, and no direction or request can be inferred from it. Moreover, Saltsman had just refused the request of plaintiff's husband to indorse permission for additional insurance on the policy, so that it seems improbable that he followed such refusal with a direction or request to present proof of loss in time. It seems to me that plaintiff's husband is mistaken in his interpretation of what was said to him by Saltsman.

[10] The retention of the verified statement or inventory, presented 19 days after the fire, and proof of loss thereafter presented, do not operate as an estoppel. Plaintiff was not misled thereby. Her rights were lost before presentation, and her position was not changed because defendant ignored it. Perry v. Caledonian Ins. Co., 103 App. Div. 113, 93 N. Y. Supp. 50. The irregularity in the statement or inventory would probably have been waived by such retention, if there had been no forfeiture; but the forfeiture itself was not waived thereby. The statement of Saltsman to plaintiff's husband that he would attend, or try to attend, a meeting of the adjusters for the other companies, if it was made, does not affect the matter. He did not attend. And the meeting of the directors, subsequently held, to which plaintiff and her husband were invited, and which the latter attended, was held at the special request of plaintiff herself, and nothing was said or done at that meeting to recognize the validity of the policy or to mislead plaintiff. Her husband left the meeting, threatening suit. The policy was declared void immediately after the fire, and was not recognized by defendant thereafter. Defendant did not request plaintiff to present proof. of loss or to perform any other act under the policy, did

not itself exercise any right thereunder, and did not mislead plaintiff in any way.

The complaint must therefore be dismissed, with costs. Findings may be prepared accordingly.